## OAKES v. STATE.

### Opinion delivered July 8, 1918.

1. CRIMINAL LAW—INDICTMENT—ALLEGATION OF TIME OF COMMIT-
   TING THE OFFENSE.—An indictment is not fatally defective and
   not demurrable, which alleges that the offense was committed "on
   the ............ day of ...................., 191.....". In a criminal prosecu-
   tion, the State must prove that the offense was committed within
   the period of the statute bar, or else that the running of the stat-
   ute has been suspended.

2. SEDUCTION—VENUE.—Where, in a prosecution for seduction, the
   testimony as to venue is conflicting, it is the province of the jury
   to reconcile the conflicts and to determine the issue on the pre-
   ponderance of the evidence, under correct instructions.

3. SEDUCTION—PROMISE OF MARRIAGE.—In a prosecution for seduc-
   tion, proof of a promise of marriage made in 1912, and continuing
   to 1915, when the first act of intercourse was had, is sufficient to
   sustain a conviction.

4. SEDUCTION—PROMISE OF MARRIAGE—LETTERS OF DEFENDANT.—In a
   prosecution for seduction, letters of the accused are admissible
   to corroborate the testimony of the prosecuting witness, as to his
   promise of marriage.

5. CRIMINAL LAW—WITNESSES UNDER THE RULE—ATTORNEY AS WIT-
   NESS.—Whether any or all witnesses shall be put under the rule
   is a matter addressed to the sound discretion of the trial court,
   and where, in a prosecution for seduction, the witnesses have
   been put under the rule, it is not error for the court to permit an
   attorney, specially employed to assist the prosecution, to testify.

6. SEDUCTION—PROMISE OF MARRIAGE.—In a prosecution for seduc-
   tion, the testimony *held* sufficient to sustain a finding that ap-
   pellant had sexual intercourse with the prosecutrix upon an un-
   conditional express promise of marriage.

Appeal from Benton Circuit Court; *J. S. Maples*,
Judge; affirmed.

*W. N. Ivie,* for appellant.

1. The indictment is defective. It contains no date when the crime is alleged to have been committed. No date within the statutory period is alleged. 92 Ark. 413; 99 *Id.* 126; 65 *Id.* 559; 110 *Id.* 170.

2. The promise of marriage was conditional on pregnancy. 113 Ark. 520, 169 S. W. 341; 25 Ore. 172; 17 L. R. 151.

3. There was no corroboration of the prosecutrix's testimony as to the promise of marriage. 113 Ark. 520; 112 Ga. 871. No designated time for marriage was fixed, and the promise, if any, was conditional. 51 L. R. A. (N. S.), 809; 41 App. D. C. 359; 25 Ore. 172; 132 Mich. 58; 48 S. W. 192; 29 Tex. App. 454; 97 Mo. 668; 77 Ark. 16.

4. The court erred in its instructions to the jury. There was no evidence of an expressed or unconditional promise of marriage. 15 Ann. Cas. 221. Defendant's theory of the case was not properly presented by the instructions.

5. The venue was not proven.

6. The testimony of the attorney for the State was incompetent. The trial was not fair and impartial.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The demurrer was properly overruled. It is not necessary to allege the date within which the crime was committed. 92 Ark. 413; 99 *Id.* 126; 110 *Id.* 170. Proof is sufficient.

2. The promise of marriage was sufficient. 113 Ark. 520.

3. Instruction No. 8, asked by appellant, was properly refused. There was no evidence upon which to base it. 102 Ark. 170; 88 *Id.* 269; 114 *Id.* 391.

4. The venue was sufficiently proven.

5. Requested instruction No. 3 was properly refused. The prosecutrix's testimony was corroborated. Defendant's letters were competent and corroborated her testimony. 77 Ark. 16.

6.   Allowing Duty to testify was not error.   Kirby's Digest, § 3142; 56 Ark. 381; 77 *Id.* 603; 90 *Id.* 135.

WOOD, J.   (1)   Appellant was convicted of the crime of seduction and appeals.   The indictment charged that, ''The said George Oakes in the said county of Benton, in the State of Arkansas, on the ............ day of........................; 191......, then and there being a single and unmarried man, unlawfully and feloniously did obtain carnal knowledge of one Myrtle Glass, a single and unmarried female, by virtue of false and feigned expressed promise of marriage previously made to her by the said George Oakes.''

Appellant contends that the indictment is defective because it contains no date when the crime is alleged to have been committed.   ''Under the statute of this State, an allegation in the indictment concerning the time of the commission of the offense is immaterial except when the time is a material ingredient in the offense, but the State must allege and prove the commission of the offense within the statutory period of limitation.''   Kirby's Digest, § 2234.   *James* v. *State,* 110 Ark. 170.   Counsel rely upon the above language to support his contention that the indictment must allege a date, within the statutory period of limitations when the offense was committed.   The word ''allege'' as quoted seems to sustain counsel.   But when this word is considered with reference to the issue for decision in that case and the cases cited to sustain the opinion, it is plain that the word ''allege,'' in the connection used, is a *lapsus pennae,* or *linguae.*   In *James* v. *State, supra,* it was alleged that the offense · charged therein was committed on a certain day, which was stated, and the date specified was within the statutory period of limitations for prosecution of the offense charged.   The defendant James admitted that he had given whiskey to the minor (which was the charge against him), but testified that the act had occurred more than a year prior to the indictment.   The trial court instructed the jury that the burden was on the defendant to show that the act was committed more than one year prior to the finding of the indictment.   We held that the instruction was erroneous

and that the burden was on the State to prove that the offense was committed within the period of the statute bar for the prosecution of such offense. The issue was not before us as to whether it was essential for the indictment to allege the date of the offense so as to show that it was within the statutory period. The court did not mean to hold that such an allegation was essential to the validity of the indictment. Such holding was not necessary, not germane to the issue, and would "have been out of harmony with the cases cited in the opinion to support what was only intended to be decided. See *Scoggins* v. *State,* 32 Ark. 205; *State* v. *Gill,* 33 Ark. 129; *Gill* v. *State,* 38 Ark. 524; *State* v. *Reed,* 45 Ark. 333. Such holding would also have been in direct conflict with *Grayson* v. *State,* 92 Ark. 413, and *Threadgill* v. *State,* 99 Ark. 126, where we held that an indictment is not fatally defective and not demurrable, which alleges that the offense was committed "on the ................ day of ........................, 190......."

If the court, in the case of *James* v. *State, supra,* had intended to overrule all these cases, it would have so stated in express terms. We conclude, therefore, that the use of the word "allege" in the opinion in *James* v. *State, supra,* was *obiter* and a mere inadvertence upon the part of the judge who prepared, as well as the judges who approved the opinion. Such inadvertence was but natural, since the court did not have for decision in that case an issue involving the above statute and for the moment did not have it in mind. But for the statute, it would be correct, generally, to say that the State must allege and prove that the offense was committed within the period of limitations for the prosecution of such offenses. What the court intended to decide in *James* v. *State, supra,* is correctly set forth in the syllabus, as follows: "In a criminal prosecution, the State must prove that the offense was committed within the period of the statute bar, or else that the running of the statute has been suspended."

Miss Myrtle Glass was about twenty-one years of age when she first met appellant in the winter of 1911.

Her sister, Mrs. Field, resided at Grove, Oklahoma, and Miss Myrtle and her widowed mother lived with Mrs. Field. Appellant at that time was about twenty-three years of age. He then worked in an abstract office, but was a prospective student of the law at the University of Oklahoma, where he went in September, 1912. It was a four years course at the university. After they met, he went to see her regularly on Sunday and Wednesday nights. After two or three visits he asked her to kiss him and she refused, telling him that her mother had always told her not to kiss a man unless he was going to be her husband. He replied that he could not marry an Indian, that his parents objected to that. She told him she was an Indian. He then went away, and in a few days she received a letter from him asking permission to visit her again, which she granted. He came and told her he had changed his mind and thought of his future happiness in the end, and was willing to marry an Indian in spite of the objection of his parents. They then became engaged to be married as soon as he had finished school. She had a tract of land and it was understood that when he had finished school they would mortgage the land and then get married. He went to school from the fall of 1912 to the fall of 1915. She gave him financial assistance while he was in school when he made a plea that he needed it. During the summer vacation of the years 1912-13-14-15 they were frequently in each other's company. During the summers of 1912-13 and 1915 they made frequent pleasure drives together, some in Oklahoma and some in Arkansas. On one of these occasions he had sexual intercourse with her. He promised to marry her if she would submit, told her that if she loved him she would do this, and if she did not she did not care very much for him. He told her that nothing would happen, and if anything did happen he would marry her and nothing would be said about it, anyway. He told her he would marry her right away. Even if things did not happen, they were going to be married anyway. She yielded on that promise and had sexual intercourse with

him, but would not have done so if he had not promised
to marry her.    This was the first act of sexual inter-
course, and it occurred in Benton County, Arkansas, be-
fore the latter part of July, 1915.    After that he had
sexual intercourse with her in Arkansas and Oklahoma.
She had never had sexual intercourse with any other.
She became pregnant.    Appellant was the father of her
child.

Mrs. Field and Mrs. Glass testified that they over-
heard the conversation between the prosecutrix and ap-
pellant in 1912 when they were engaged to be married,
and these witnesses fully corroborated the testimony of
the prosecutrix as to the promise of marriage made at
that time.    The prosecutrix testified that the date of the
marriage fixed by the promise made at that time (towit,
"when he had finished school") had never been changed.
Several letters that were sufficiently identified by the ad-
mission of appellant as his letters to the prosecutrix were
introduced over the objection of appellant.    These let-
ters were written to prosecutrix both before and after
the alleged first act of sexual intercourse, and tended to
prove that a close and affectionate relation existed be-
tween them.

Appellant testified that there was never any promise
of marriage.    He admitted that he had sexual intercourse
with the prosecutrix, but denied that it occurred in Ark-
ansas, and contends that, even if it did occur here and as
stated by the prosecutrix, there was no corroboration
of her testimony as to the promise of marriage when the
act took place, and that the promise itself was but a con-
ditional one.    Hence appellant insists that there is no
testimony to sustain the verdict, and that the court erred
in not giving his prayer for instruction to find him not
guilty.

(2)    We must say that the testimony of the prose-
cutrix is very conflicting on the issue of venue.    But it
was the province of the jury to reconcile these conflicts,
and to determine that issue on the preponderance of the
evidence under correct instructions. *Douglass* v. *State,* 91

Ark. 492; *Patrick* v. *State, ante* p. 173. The instructions
on venue were more favorable to appellant than he had
the right to ask, because they required the State to prove
the venue beyond a reasonable doubt. The court cor-
rectly instructed the jury that if the first act of sexual
intercourse was committed in Oklahoma, and not in Ark-
ansas, to "find the defendant not guilty." The verdict
of the jury is conclusive on the issue of venue.

(3-4)     Learned counsel for appellant in his excellent
brief treats the alleged promise of marriage as if it were
susceptible of division under the evidence into what he
designates as the "first marriage contract" of 1912, and
as the second, "the promise of marriage at the time it
was alleged the offense was committed in 1915." So
treating it, he argues that the latter promise was not cor-
roborated, and that at most it was a promise of marriage
only upon the condition that pregnancy resulted from the
intercourse. Counsel wholly misapprehend the effect of
the testimony. If the promise to marry was made in
1912, as the jury found, then there was no evidence to
warrant a finding that such promise had ever been aban-
doned and another promise made. While appellant de-
nies that there was any promise of marriage at all, he
does not claim that there was any break in the intimate
relation that existed from the time of the alleged prom-
ise of marriage in 1912 to the time of the alleged first act
of sexual intercourse in July, 1915. The testimony of
both the prosecutrix and of the appellant, and the letters
in evidence, show that the relation of intimacy begun in
1912 continued without interruption until long after the
alleged act of sexual intercourse in 1915. If there was a
promise of marriage, as the jury were justified in finding,
then the undisputed evidence shows that there was only
one promise which continued to the time of the alleged act
of intercourse. The testimony of the prosecutrix as to
the promise of marriage is corroborated not only by the
testimony of Mrs. Field and Mrs. Glass, but also by the
letters of appellant to the prosecutrix. These letters
were introduced before appellant had admitted the act

of sexual intercourse. It is unnecessary to set them out in detail. In the first letter, soon after he had entered school, he begins with, "Dear Sweetheart," and evidently answering a proposal on her part to sell her land and render him financial assistance, he writes with reference to this: "My, you are getting good all at once—the idea of us selling the farm. I told you repeatedly that I refuse to sign the deed, ha, ha," etc. Again referring to the same subject, "It seems to me that being a law student I ought to be able to work at least half enough to live out of you and my dady and my bud and possibly a few others that I could work on in the meantime." Further: "But, dear, it is awfully sweet of you to be so generous. * * * Of course, if you should strike oil and get oodles of money and did not need it all, I could take it from you and never feel the pangs of self reproach. But you, a sweet, unselfish little girl, making your own way— not yet, ha, ha! But thanks, just the same, sweetheart, and don't change your mind when the call comes." In the next he begins: "Dear, Girl, your oil letter received," etc. Then after congratulating her on the prospective discovery of oil on her land and giving suggestions as to how to proceed with reference thereto, in the course of his letter he says: "I guess I'll have to come home and see about you, oil makes it easy to do lots of things, ha, ha! And somebody else right there trying to beat me, too. * * * Let me know if you need anything else. We will make an inspection trip when I get home—if you want—and try to have a well drilled. With love." In the letters received by prosecutrix from appellant after she had informed him of her condition of pregnancy he addresses her in some of them as "Dear Girl" and in others as "Dear Walleah." The Indian nickname of prosecutrix is "Walleah." In these letters there are many veiled expressions which the testimony of the prosecutrix tends to explain, and which in connection with her explanation tend to prove that appellant knew and acknowledged that he was the author of her shame. The prosecutrix testified that he told her to destroy the child,

which she refused to do, and he was scolding her for not doing as he told her. Without pursuing the subject further, it suffices to say that the letters were competent, both for the purpose of corroborating the prosecutrix as to the promise of marriage, and the act of sexual intercourse. While as to the intercourse, prosecutrix after appellant's admission, was fully corroborated, yet at the time the testimony was offered, there had been no such admission, and the testimony was therefore competent. Appellant did not afterwards ask to have it excluded, or else have it confined to the issue of the promise of marriage. *St. L., I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 482. See *K. C. So. R. Co.* v. *Leslie,* 112 Ark. 305-329. The court did not err in admitting the letters. They are well within the rule announced in *Lasater* v. *State,* 77 Ark. 468, and *Patrick* v. *State, ante* p. 173, as to the character of evidence that may be adduced in corroboration of the testimony of the prosecutrix as to the promise of marriage. We conclude, therefore, that the court did not err in refusing appellant's prayer for peremptory instruction. Nor in refusing appellant's prayer for an instruction telling the jury that the letters of appellant were no corroboration of the testimony of prosecutrix.

(5) The court did not err in admitting the testimony of Claude Duty, who was one of the active attorneys specially employed to aid in the prosecution. He had not been put under the rule as other witnesses had been. The question as to whether any witness, or all the witnesses, shall be put under the rule is one that addresses itself to the sound discretion of the court, and that discretion was not abused in permitting Duty to testify. Kirby's Digest, § 3142; *Vance* v. *State,* 70 Ark. 272; *Hlass* v. *Fulford,* 77 Ark. 603; *St. L., I. M. & S. Ry. Co.* v. *Pate,* 90 Ark. 135.

(6) Did the prosecutrix permit appellant to have sexual intercourse with her upon a promise to marry only on condition that pregnancy resulted from such intercourse? Recurring to the testimony on this phase of the case, he told her if she loved him she would do this, if she

did not she did not care very much for him. He told her nothing would happen, if it did he would marry her immediately and nothing would be said about it any way. If things did not happen they were to be married anyway. She would not have allowed him to have intercourse with her had it not been for his promise to marry.

Pregnancy resulted. She informed him. He tried to get her to destroy the unborn child. She refused to do this. He then went away. She pursued him for a time, begging him to marry her in order that "the baby might have a name." He ignored her appeals.

Thus according to her testimony, which the jury believed, "with too credent ear she list his promise, lost her heart, and her chaste treasure opened to his unmastered importunities." When the resultant pregnancy was discovered, instead of hastening the marriage as he had promised, he "slipped the noose and sailed away." She "still loved him and thought of him tenderly as the father of her child," and followed him with pathetic entreaties to redeem his promise. He turned a deaf ear and she turned to the law. The verdict and judgment herein are in response to the prosecution instituted by her, and it occurs to us that the testimony adduced on behalf of the State is amply sufficient to sustain a finding that appellant had sexual intercourse with the prosecutrix upon an unconditional express promise of marriage.

The appellant, in his testimony, denied categorically that there was a promise of marriage. The jury resolved this issue against him. He did not in his testimony raise the issue that there was a promise of marriage only upon condition that pregnancy resulted from their intercourse. The testimony of the prosecutrix does not of itself raise such issue. The most that can be said of it when viewed in the strongest light for appellant is that she permitted him to have sexual intercourse with her upon condition that he would fulfill his promise to marry her, and, to marry her right away, if pregnancy resulted, in order to camouflage their illicit commerce.

So far as the application of the law to the facts is concerned, it is impossible, without super-refinement of reasoning, to distinguish this case in principle from *Taylor* v. *State,* 113 Ark. 520, except that the facts in the instant case are more favorable to the State's contention than in that case.   In *Taylor* v. *State* we held:   "Defendant will be held guilty of the crime of seduction, where he and the prosecutrix were engaged to be married, and while engaged he induced the prosecutrix to haxe sexual intercourse with him by promising that if she became pregnant he would marry her immediately, and when she submitted to him because of her engagement and promise, provided that prior to said intercourse she was chaste." Nor can it be distinguished from the case of *Davie* v. *Padgett,* 117 Ark. 550.   The latter case was an action for damages for breach of promise of marriage, seduction being alleged in aggravation of the damages claimed.   The precise question here was under review there and we disposed of it as follows:   ".According to the plaintiff's testimony, there was an unconditional promise of marriage, and on the other hand the defendant testified that there was no promise at all.   Therefore, there was no issue as to there being a conditional promise or one based upon the consideration of sexual intercourse.   The instruction therefore submitted a matter foreign to the issues, and was properly refused by the court."   The same must be said here as to the ruling of the court in refusing appellant's prayer for instruction No. 8, by which appellant sought to have the issue presented as to whether the sexual intercourse was based on a conditional promise of marriage.

The court's instructions in the instant case were in conformity with the law as announced in *Taylor* v. *State,* and *Davie* v. *Padgett, supra.*   The trial court correctly applied the law to the facts of this record.

Since the appellant challenged the evidence, urging that it is insufficient to sustain the verdict, we have made a full statement of the facts from the viewpoint of the State.   It should be said, however, in justice to appel-

lant, that his testimony presented another side to the controversy, which, unfortunately for him, the triers of fact, under proper instructions, did not see proper to uphold.

The record presents no error in the trial of the cause, and the judgment is therefore affirmed.