Ronald Jack CAMPBELL *v.* STATE of Arkansas

CR 78-144                                    576 S.W. 2d 938

Opinion delivered February 19, 1979
(Division II)

80

*Paul D. Groce,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joyce Williams Warren,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Ronald Jack Campbell was tried on February 16, 17, 18 and 21, 1978, on a charge of murder in the first degree for the killing of Harvey Edgar White on May 17, 1972. He was found guilty and sentenced to life imprisonment. The charge was made by information filed on May 24, 1972, two days after the arrest of Campbell in Memphis, Tennessee. He entered pleas of not guilty and not guilty by reason of insanity on June 5, 1972, and was then committed to the Arkansas State Hospital for a

period of 30 days for observation and examination. On October 2, 1972, the Circuit Court of Pulaski County, upon an adjudication of insanity, committed him to the state hospital, where he was confined (except for periods between March 17, 1976 and July 16, 1976, and December 18 and December 19, 1976 when he was in "escape status") until August 31, 1977, when the circuit court ordered that he be remanded to the Pulaski County jail to be held to await trial on the charge.

For reversal, appellant relies upon the following points:

I

THE TRIAL COURT ERRED IN DENYING APPELLANT'S WRIT OF HABEAS CORPUS IN THAT SAID FIVE-YEAR DETENTION WAS UNLAWFUL 'N THAT THE APPELLANT WAS CONFINED iN VIOLATION OF ARK. STAT. ANN. § 41-607(2) (REPL. 1977) WHICH REQUIRES CIVIL COMMITMENT IN COMPLIANCE WITH ARK. STAT. ANN. § 59-408 (REPL. 1971), WHEN CONFINEMENT IS IN EXCESS OF ONE YEAR.

II

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS BASED ON HIS RIGHT TO A SPEEDY TRIAL WHICH WAS ABRIDGED BY THE FIVE-YEAR DELAY.

III

THE TRIAL COURT ERRED IN PERMITTING, OVER APPELLANT'S OBJECTION, THE INTRODUCTION OF STATE'S EXHIBITS 2 AND 3, WHICH WERE PICTURES OF THE DECEASED'S BODY WHEN THEY CONTAINED ONLY SOME MATERIAL OF PROBATIVE VALUE AND WERE NOT VERY RELEVANT TO THE TESTIMONY OF ANY OF THE WITNESSES; AND THEY WERE HIGHLY PREJUDICIAL.

## IV

THE TRIAL COURT ERRED IN NOT DIRECTING A VERDICT FOR THE APPELLANT AS PRAYED FOR IN APPELLANT'S REQUESTED INSTRUCTION NO. 1 BECAUSE APPELLANT ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT HE HAD A MENTAL DISEASE OR DEFECT AT THE TIME OF THE ALLEGED OFFENSE.

## V

THE TRIAL COURT ERRED IN NOT GIVING APPELLANT CREDIT FOR THE TIME SPENT IN CUSTODY WHILE AWAITING TRIAL IN THIS MATTER.

We find no reversible error and affirm. We will discuss appellant's points in the order listed.

## I

On June 11, 1977, appellant filed a petition for writ of habeas corpus. In it, he alleged that his detention was unlawful because he was confined for more than five years in violation of Ark. Stat. Ann. § 41-607 (2) (Repl. 1977), which he contends required compliance with Ark. Stat. Ann. § 59-408 (Repl. 1971). The former section provides that any detention after one year from the date of admission be under normal civil commitment procedures. A hearing on this petition was held on July 12, 1977, but a decision was postponed until briefs were filed. In his brief, appellant invoked provisions of the Arkansas Criminal Code, which became effective on January 1, 1976. See Ark. Stat. Ann. § 41-101 (Repl. 1977). The petition was denied on August 30, 1977. On September 6, 1977, the trial was continued until a later date, in order to give appellant time to appeal to this court. Notice of appeal and a designation of record were filed September 22, 1977. Another notice of appeal, reciting that a transcript had been ordered, was given on September 27, 1977. An extension of 90 days for the filing of the transcript was granted on December

20, 1977. It was not filed here until September 18, 1978. This was more than seven months after the judgment was entered. It appears that the delay was the result of appellant's withdrawal of his earlier notice of appeal in order to include this appeal with the appeal of the judgment of conviction.

The denial of the petition for habeas corpus was a final, appealable order. See, *Fulks* v. *Walker*, 224 Ark. 639, 275 S.W. 2d 873. Neither appellant nor the trial court could extend the time for lodging the transcript to a date more than seven months after the entry of that judgment. Ark. Stat. Ann. § 27-2127.1 (Supp. 1977).

Appellant, however, contends that non-compliance with Ark. Stat. Ann. § 59-408 pursuant to § 41-607 (2) invalidates his conviction. In any event, Ark. Stat. Ann. § 41-607 (2) has no application to appellant, who was committed to the state hospital "until restored to reason," in accordance with Ark. Stat. Ann. §§ 59-411 — 59-413 (Repl. 1971) on October 2, 1972, more than three years before § 41-607 (2) went into effect. Appellant seeks to bring himself into the coverage of the act by invoking § 41-102 (4), which provides that a defendant in a criminal prosecution for an offense committed prior to the effective date of the Arkansas Criminal Code may elect to have the construction and application of any defense to the prosecution governed by the provisions of the code. He takes the position that his election made § 41-607 (2) applicable.

There is no merit to this contention. By no stretch of the imagination can it be said that the provisions of this section are a defense to the prosecution of appellant. The application of § 41-102 (4) is governed by Ark. Stat. Ann. § 41-110 (3) (Repl. 1977), defining a defense under the code. A defense is any matter: (1) so designated by the code, or (2) so designated by a statute not a part of the code, or (3) involving an excuse or justification peculiarly within the knowledge of the defendant on which he can fairly be required to introduce supporting evidence. The disposition of one found mentally unfit to proceed with a trial because of mental disease or defect cannot possibly be considered a defense under the code. Furthermore, there is nothing in Ark. Stat. Ann. § 41-

607, or the chapter of which it is a part, to indicate any legislative intent that this section should have any retroactive or retrospective effect.

## II

Appellant filed a motion to dismiss the information on the ground that he had been denied his constitutional right to a speedy trial by reason of his confinement for over five years. This motion was filed on December 15, 1977. Appellant alleged that there had been a deliberate and purposeful delay by the state which had prejudiced him and prevented him from being able to properly prepare his defense. It appears that appellant's confinement was in full compliance with the law then applicable. The report from the state hospital to the circuit court made on July 17, 1972, was that appellant was insane at the time of the mental examination and probably was insane at the time of the commission of the alleged offense and requested that he be committed to the state hospital for treatment. A hearing on this report was held in the circuit court on October 2, 1972. Appellant and his court-appointed attorney were present. As a result of this hearing, appellant was committed to the Arkansas State Hospital until such time as he was restored to reason, pursuant to Ark. Stat. Ann. §§ 59-411 — 59-413.

In presenting his motion in the trial court, appellant first relied upon Ark. Stat. Ann. § 43-1308 (Repl. 1977), which provided that nothing in the act under which the circuit court committed him should prevent a trial of a defendant at an adjourned day or special term of court prior to the next regular term of court after the entry of an order for observation and examination. We agree with the trial judge that this section was inapplicable. It merely permitted a trial prior to the next regular term, in order to minimize motions for observation by defendants as a dilatory move.

It appears that some member of the staff of the state hospital had reported to the court at the hearing on the petition for habeas corpus held on July 12, 1977, that the staff was in the process of reevaluating Campbell's status and that the trial judge then requested that a copy of the evaluation be

forwarded to the court as soon as it was completed. The report was dated August 11, 1977. The following significant facts were revealed by it:

At a psychiatric staff conference held at the hospital on July 17, 1972, the professional opinions of a majority of those present was that Campbell was psychotic and that the diagnosis should be schizophrenia, schizoaffective type. Campbell had been involved in psychotherapy and group activity programs since he had been in the hospital. Because of the feelings of some of the staff who had worked with Campbell, it was decided to reevaluate his mental status after his second successful escape in December, 1976. Outside consultation services of a psychiatrist and a psychologist in private practice who had not had any prior contact with Campbell were obtained. Thereafter, a special psychiatric staff conference was held. Both outside consultants and members of the hospital staff participated. Professional opinion was divided as to Campbell's mental status at the time of the alleged offense and at the time of the current examination and as to whether he had schizophrenia. Most of the participants agreed that Campbell had a character (personality) disorder with neurotic traits. The consensus was that Campbell was not mentally ill to the degree of legal irresponsibility at the time of the special examination and that he did have the mental capacity to understand the proceedings against him and to assist effectively in his own defense. Opinion was equally divided as to Campbell's mental illness to the degree of legal irresponsibility at the time of the commission of the alleged offense. The consensus was that he would most probably resort to aggressive or violent behavior as he had done in the past. Opinion was divided as to whether Campbell's behavior was the result of a character disorder or because of a psychotic process.

Because of the divided professional opinion and because of the many legal, social and ethical issues involved, it was recommended that Campbell be returned to a court for disposition as the best means of resolving the issues.

The procedures which resulted in the commitment of Campbell were the direct result of his plea of not guilty by reason of insanity. He has never requested that he be brought to trial, either before or after his petition for habeas corpus, or before or after the filing of his motion to dismiss. Under these circumstances, Campbell is in no position to complain about not having been tried on this charge earlier.

The constitutional right to a speedy trial is not absolute; it is necessarily relative and among the principal factors to be assessed are the reason for the delay and the good faith, or lack of it, on the part of state officials. *Randall* v. *State,* 249 Ark. 258, 458 S.W. 2d 743; *Curan* v. *State,* 260 Ark. 461, 541 S.W. 2d 923, cert. den. 434 U.S. 843, 98 S. Ct. 144, 54 L. Ed. 2d 108 (1977). The delay in this case was initiated by appellant's plea of insanity. Since the trial court followed the statutory procedures prescribed in such a case, there is no reason why the time elapsed solely as a result of following these procedures in according him due process of law should not be chargeable to the defendant. See *O'Neal* v. *State,* 253 Ark. 574, 487 S.W. 2d 618. We have said that the constitutional right to a speedy trial is violated only by vexatious, capricious and oppressive delays manufactured by the ministers of justice. *Leggett* v. *Kirby,* 231 Ark. 576, 331 S.W. 2d 267, cert. den. 362 U.S. 981, 80 S. Ct. 1073, 4 L. Ed. 2d 1018 (1960). A speedy trial is a trial conducted according to fixed rules, regulations and proceedings of law, free from vexatious, capricious or oppressive delays manufactured by ministers of justice; and what constitutes a speedy trial must be determined from the varying circumstances of each particular case with reference to the practical and efficient operation of the law. *Randall* v. *State,* supra. There is no indication that officials of the state have not acted in complete good faith. There was good reason for the denial of appellant's motion to dismiss.

## III

The photographs to which appellant refers in relation to this point for reversal show the nude body of White. One of them showed White lying on his back on a hospital examin-

ing table. It showed dried blood on his chest and ribs and on the side of his face and head. The blood on the face and head of the body emanated from open wounds on the cheek and the bridge of the nose. The other photograph showed the body on its right side with an individual pointing to an entrance wound in the back of the body. It showed a considerable quantity of blood on a sheet on which the body was lying. Appellant complains of the display of blood and the prominent exposure of the buttocks of the body as inflammatory. He contends that the probative value of the photographs was substantially outweighed by unfair prejudice resulting from their inflammatory nature. Appellant's objection was made in camera, after these photographs, along with several others, had been offered through the testimony of a police detective. It was based upon Ark. Stat. Ann. § 28-1001, Rule 403 (Supp. 1977). The state offered these photographs to corroborate the testimony of Phyllis Thorne, who was present at the time of the shooting of White, as to the actual shooting and the circumstances surrounding it, and to show the wounds in order to enable the jury to understand what had taken place and the motivation and intent of the accused. The trial judge excluded five photographs on the basis of appellant's objection.

The Uniform Rules of Evidence, of which the rule on which appellant relies is a part, do not change the Arkansas law as drastically as appellant seems to think. As appellant points out, we said in *Rodgers* v. *State,* 261 Ark. 293, 547 S.W. 2d 419, the test in determining whether a photograph should be admitted or facts stipulated should always depend upon the question whether the inflammatory nature of the photograph is outweighed by its probative value, and, that, if it in some way enables the jury to understand the testimony, its admissibility lies within the sound discretion of the trial court. Appellant argued that the photographs were unnecessary because he would not contend during the trial that he did not commit the acts alleged, but would assert that he was not guilty by reason of insanity. The fact that photographic evidence is cumulative or unnecessary by reason of admission by a defendant of the facts disclosed by the photograph will not, standing alone, render it inadmissi-

ble. *Perry v. State,* 255 Ark. 378, 500 S.W. 2d 387.[1]

The nature, extent and location of the wounds were relevant and material, at least on the questions of intent and state of mind. Appellant's defense of insanity did not relieve the state of the burden of proving every element of the charge of murder in the first degree, including premeditation, deliberation and intent, beyond a reasonable doubt. *Leland v. State,* 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952). Even if the mental disease or defect did not constitute a defense, evidence of it was relevant on the question of his culpable mental state and especially on the element of premeditation. Ark. Stat. Ann. § 41-602 (Repl. 1977). Thus, it is clear that appellant's admissions, or rather his failure to contest the evidence pertaining to his acts, did not change the state's burden of proof.

The trial court's exclusion of some of the photographs is indicative of an exercise of some discretion in the matter. See *Perry v. State,* supra. The photographs were corroborative of Miss Thorne's testimony that the victim was shot twice and that one of the shots was fired into his back while he was lying prone. We cannot say that there was any abuse of the trial judge's discretion in weighing the probative value of the two photographs admitted against the danger of unfair prejudice, waste of time and needless presentation of cumulative evidence.

## IV

Appellant contends that we should overrule such decisions as *Stanley v. State,* 248 Ark. 787, 454 S.W. 2d 72, through which we have held that, on appellate review of evidence relating to insanity (or mental disease or defect), this court will not attempt to determine where the preponderance lies, but will affirm the judgment if there is substantial evidence to support the jury verdict on which it is

---

[1]The advisability of the prosecution's introducing all persuasive evidence has been heightened, not only by the risk of failure to eliminate all reasonable doubt about every element of the offense charged, but also by the hazard of dismissal to avoid double jeopardy, if an appellate court finds the evidence insufficient to support a verdict of guilty. *Pollard v. State,* 264 Ark. 753, 574 S.W. 2d 656 (1978).

based. This we decline to do. In cases such as this, the jury's decision depends to a great extent upon evaluation of credibility of witnesses and determination of the weight to be accorded to their testimony, particularly when expert opinions are critical to the issue.

Appellant argues that the trial court should have directed a verdict because the state's evidence on the issue cannot be considered persuasive when compared with that offered by him. Of course, the trial judge could not have directed a verdict upon weighing the evidence and finding it to preponderate in favor of appellant. Mental disease or defect is an affirmative defense if, as a result thereof, the defendant, at the time of the offense with which he is charged, lacked the capacity to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. Ark. Stat. Ann. § 41-601 (Repl. 1977). Since it is an affirmative defense, the defendant was required to establish it by a preponderance of the evidence. Ark. Stat. Ann. § 41-601, -110 (Repl. 1977) and commentary. And, as we have always held, the question of preponderance is primarily one for the jury, and a judge may direct a verdict only when no fact issue exists. *Oakes v. State,* 135 Ark. 221, 205 S.W. 305; *Sherman v. Missouri Pacific RR. Co.,* 238 Ark. 554, 383 S.W. 2d 881; *Harris v. State,* 262 Ark. 680, 561 S.W. 2d 69. See also, *McCully v. State,* 141 Ark. 450, 217 S.W. 453; *Davis v. Britt,* 243 Ark. 556, 420 S.W. 2d 863; *Hankins v. State,* 133 Ark. 38, 201 S.W. 832. If appellant's argument is taken as an assertion that the testimony on behalf of the state was not substantial in reliance upon holdings in cases such as *Arkansas Pollution Control Com'n. v. Coyne,* 252 Ark. 792, 481 S.W. 2d 322, that to be substantial, evidence must be valid, legal and persuasive, we disagree. The evidence appellant considers non-persuasive was the testimony of Drs. Albert F. Rosendale and W. R. Oglesby, who were permitted to express opinions as experts. It is true that we are not required, on appellate review, to accept as substantial evidence the opinion of an expert when it clearly appears that it is opposed to physical facts, common knowledge, the dictates of common sense or is pure speculation. *Easton v. H. Boker & Co.,* 226 Ark. 687, 292 S.W. 2d 257. See also, *Arkansas State Highway Com'n. v. Byars,* 221 Ark. 845, 256 S.W. 2d 738. By no stretch of the imagination can it be

said that the opinion of either of these doctors is opposed to physical facts, common knowledge, or the dictates of common sense. The infirmities alleged by appellant would seem to suggest that the opinions of these witnesses were based upon speculation because: (1) Dr. Rosendale at first accepted the contrary opinion of Dr. C. V. Taylor (who testified on behalf of appellant), but formed a different opinion some eight or ten months after the alleged crime; (2) Dr. Rosendale never administered or required any mental test to assist him in arriving at his opinion; (3) Dr. Rosendale only had contact with appellant about six times over a period of five years; and (4) Dr. Oglesby had only one brief contact with appellant before forming his opinion. As we view the testimony, these circumstances had a bearing on the weight to be given to the testimony of these witnesses, but not on its substantiality.

Before stating the reasons we find the testimony of these doctors to be substantial, we should note that there was little, if any, basis for an issue as to Campbell's ability to appreciate the criminality of his act on the day of the alleged crime. The gist of his defense is that he killed White upon his conviction that he should commit a crime or crimes so terrible that he would be apprehended, so he could be society's "guinea pig" in determining what caused people to commit horrible crimes. The opinions, then, are of greatest significance on the question of Campbell's capacity to conform his conduct to the requirements of law.

Dr. Rosendale is employed as a psychiatrist by the Arkansas State Hospital. He is in charge of Rogers Hall, where Campbell was confined. He was on leave and not present at the time of Campbell's first "staffing." When he returned, he accepted the staff diagnosis of Schizophrenia, Schizo Affective Type, Depressed. After six or eight months, he formed his own opinion that Campbell's mental condition was nothing more than a character disorder (which is non-psychotic) and a belief that, at the time of the alleged offense, Campbell was able to conform his conduct to the requirement of law or appreciate the criminality of his act. He stated that Campbell had only approached him about a half dozen times and had always gone to female personnel to

express his wants and that this information was passed on to the doctor. Based upon the general observation of Campbell, Dr. Rosendale expressed the opinion that Campbell was a very adept manipulator.

Dr. W. R. Oglesby is Deputy Commissioner for Psychiatric Services and a psychiatrist at the Arkansas State Hospital. Based upon his observation and information and data obtained from records pertaining to Campbell, including the reports of outside pscyhologists and psychiatrists hired by the hospital to interview Campbell, this witness expressed the opinion that Campbell had an antisocial personality,[2] is not a psychotic person, and that he was able to conform his conduct to the requirements of the law. He believed that a statement by Campbell as to his motivation for the killing, made to the police when he was arrested in Memphis, was not a delusional statement, but a rationalization, i.e., in psychiatric terms, a superficially reasonable or plausible excuse for his actions. He said that Campbell lacked socialization, was unable to resist urges to do violent or wrongful acts, and had no internal sense of guilt or empathy for others. He said that Campbell was able to offer plausible rationalizations in psychiatric terms because he had been psychiatrically contaminated by having undergone transactional analysis. Dr. Oglesby expressed the opinion that appellant was a "con-artist" — as are many people with antisocial personalities.

In viewing the testimony of Drs. Rosendale and Oglesby, we note that Campbell had, before the crime with which he was charged, been an outpatient at the Community Mental Health Center on the state hospital grounds. Dr. Taylor also found Campbell to be a very competent, manipulating person and the cause of considerable difficulty because of his intelligence. The governing rule of evidence permits an expert witness to base his opinion upon, or to draw an inference from, facts or data in the particular case perceived or made known to him at or before the hearing. Ark. Stat. Ann. § 28-1001, Rule 703 (Supp. 1977); Field, A Code of Evidence for Arkansas?, 29 Ark. Law Rev. 1, 29;

---

[2]An abnormality manifested only by antisocial conduct is not a defense for mental disease or defect. Ark. Stat. Ann. § 41-601 (2) (Repl. 1977).

*Arkansas State Highway Com'n.* v. *Russell,* 240 Ark. 21, 398 S.W. 2d 201; *Amos* v. *Stroud,* 252 Ark. 1100, 482 S.W. 2d 592.

### V

Finally, appellant invokes Ark. Stat. Ann. § 41-904 (Repl. 1977) as a basis for reversal. The trial judge did not give credit for the time spent in custody as directed by that statute, which is a part of the Arkansas Criminal Code. This requirement is not a defense, as defined by the code, so appellant's invoking the defenses provided by the code did not bring this section into play. Under Ark. Stat. Ann. § 41-102 (3) (Repl. 1977), provisions of the code do not govern punishment. An offense is punished in accordance with law as it existed when the offense was committed.

The governing law at the time of the offense of which appellant was found guilty provided that the sentencing judge might, in his discretion, credit time already served in jail or other place of detention. Ark. Stat. Ann. § 43-2813 (Supp. 1975). There is no abuse of discretion here, and appellant has not asserted that there was.

Appellant also relies upon *Smith* v. *State,* 256 Ark. 425, 508 S.W. 2d 54, in which we held that the court must give credit for pretrial incarceration where a defendant was held in custody on a bailable charge and was prevented from posting bail solely because of his indigency. Appellant's being held in custody was not attributable to his indigency. Even if appellant were otherwise entitled to credit for the time he was held in custody, there is simply no way to credit this time against a life sentence. Life less five years is a period not susceptible of prognostication. A life sentence is for the natural life of the person sentenced and is not based upon mortality tables or any other formula. Furthermore, the record does not disclose that appellant asked in the trial court that he be given credit against his sentence. We will not consider such a question for the first time on appeal. *McCoy* v. *State,* 259 Ark. 607, 535 S.W. 2d 439.

### OTHER MATTERS

We agree with appellant's attorney that the court's holding that a minister was not qualified as an expert on the ques-

tion of appellant's mental disease or defect was not reversible error because it was not abuse of the court's discretion.

Appellant has not pointed out any other objections made by him and not sustained in the trial court. The Attorney General has given transcript references to others, which he did not consider of sufficient merit to treat by legal argument, but did not otherwise identify them. We have examined the record and find no error to the prejudice of appellant. Specifically, we find no reversible error in the following:

1. Denial of appellant's motion to conduct a voir dire examination of prospective jurors in chambers.

2. Testimony about the actions of a woman who was with appellant at the time of his arrest.

3. Objection to the testimony of this woman relating to other crimes committed by the defendant, who later took the witness stand himself and testified about the crimes committed by him.

4. Inquiry by the prosecuting attorney of a minister who testified on behalf of appellant as to whether he knew the meaning of the term "psychiatrically contaminated," in spite of the fact that the trial judge refused to permit the witness to testify as an expert witness.

5. A question of this minister by the prosecuting attorney concerning a possible statement made by appellant on the night before the commission of the offense with which appellant was charged, to which an objection was, in essence, sustained and the answer to which was not prejudicial to appellant.

6. Questioning of Dr. Taylor by prosecuting attorney about a 1977 "staffing" with reference to appellant's mental condition in 1972 over appellant's objection that the later "staffing" was irrelevant.

7. Questioning of Dr. Taylor concerning disagreement

among those who examined defendant on the diagnosis of schizophrenia.

8. The trial judge's inquiring of Dr. Taylor whether Campbell was, in the opinion of the witness, schizophrenic at the time of the trial, which was answered in the affirmative.

9. The prosecuting attorney's statement that Dr. Taylor based his opinion on statements contained in a confession by appellant at the time of his arrest, in the form of a question which was never answered, over appellant's objection, on which appellant never obtained a ruling.

10. Appellant's attorney's objections to Campbell's testifying, after the trial judge had advised Campbell that he did not have to testify, that the jury could not draw any inference of guilt from the fact that he did not take the witness stand, and that he would be permitted to testify if he wanted to, in spite of his attorney's advice not to do so.

11. Inquiry by prosecuting attorney of appellant whether his saying that he had committed a prior offense as "self-punishment" was his idea or that of a psychiatrist who had examined him, to which appellant objected as calling for hearsay evidence. Appellant later stated that he thought of it.

12. The statement and actions of a woman who was with appellant at the time of his arrest that appellant had kidnapped her in Dallas and her testimony to that effect, after appellant had testified that he had approached her and requested, while showing her his .38 caliber pistol, that she drive him somewhere.

13. The statement of a nurse at the state hospital that, in the five years she had been in daily contact with the appellant, she had not seen signs of mental illness of appellant.

14. Objections to instructions given by the court at the request of the state, all of which were general objections.

15. Appellant's objection to the trial judge's questioning of the minister whom appellant sought to qualify as an expert.

16. The trial court's refusal to give appellant's requested instruction that a finding of not guilty by reason of insanity would not necessarily mean that the appellant would be released from confinement.

The judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.