Larry Dean ROBERTSON *v.* STATE of Arkansas

CR 90-117 802 S.W.2d 920

Supreme Court of Arkansas
Opinion delivered January 22, 1991

*Haddock & Mazzanti*, by: *James W. Haddock* and *Joseph P. Mazzanti III*; and *Johnson & Harrod*, by: *S. Reid Harrod*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This is the appellant's second appeal. In his first, we reversed his conviction of capital murder for which he was sentenced to life imprisonment without parole. Our reversal was based upon the trial court's refusal to rule on whether appellant was mentally competent to stand trial. *Robertson v. State*, 298 Ark. 131, 765 S.W.2d 936 (1989). On remand, the trial court determined the appellant was competent, and after receiving a second trial, appellant again was found guilty of capital murder and sentenced to life imprisonment without parole. In this second appeal, he advances three points for reversal, but we hold none of them have merit. In considering appellant's arguments, we need not repeat the details of the murder committed by the appellant since those facts are sufficiently set out in our earlier decision and a further recount of the crime is unnecessary in disposing of appellant's present arguments.

Appellant's main argument concerns his affirmative defense asserted at trial that he was not guilty by reason of mental disease or defect. More particularly, appellant contends that there is insufficient evidence to support the jury's finding that he was sane or had the mental capacity necessary to perform the crime.

It is well settled that appellant had the burden of establishing his affirmative defense by a preponderance of evidence. *Campbell* v. *State*, 265 Ark. 77, 576 S.W.2d 938 (1979). On appeal from a jury verdict rejecting an insanity defense the issue is whether there is any substantial evidence to support the verdict. *Couch* v. *State*, 274 Ark. 29, 621 S.W.2d 694 (1981).

Because much of the appellant's argument relies upon the testimony given in his behalf by four experts in the psychiatric field, we note the rule that a jury is not bound to accept opinion testimony of experts as conclusive, and it is not compelled to believe their testimony any more than the testimony of other witnesses. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342

(1979). In fact, we have said that, even when several competent experts concur in their opinions and no opposing expert evidence is offered, the jury is still bound to decide the issue upon its own fair judgment. *Id.* Testimony of expert witnesses is to be considered by the jury in the same manner as other testimony and in the light of other testimony and circumstances in the case; the jury alone determines its value and weight, and may, under the same rules governing other evidence, reject or accept all or any part thereof as they may believe it to be true or false. *Id.*

■ No useful purpose would be served by a review of all the testimony relevant to appellant's insanity defense, other than to show that there was substantial evidence to support the jury verdict. In this respect, the state presented testimony from Dr. John Christopher Morino, a staff psychiatrist with the State Mental Hospital. Dr. Morino related that, during his meeting with and evaluation of appellant, the appellant recalled and recited in detail the events leading to his stabbing of the victim in her eyes with a pair of scissors. He said that he had a memory lapse and the next thing he remembered was that his left hand was around the victim's throat and his right hand had a pair of scissors in it. Appellant then attempted to flee the scene. Morino opined his evaluation revealed the appellant was neither schizophrenic nor psychotic at the time he killed his victim. Further, Dr. Morino stated that the appellant's history of substance abuse made a diagnosis of schizophrenia impossible.

Appellant offered four psychiatric experts whose testimonies conflicted with Morino's. In sum, those experts concluded appellant was schizophrenic and could not tell right from wrong at the time he committed the crime. Through those same experts and appellant's thorough cross-examination of Dr. Morino, appellant attacked what he perceived to be the weaknesses in Morino's one-day evaluation and the opinion he reached from it. Such proof, of course, has a bearing on the weight to be given Dr. Morino's testimony, but not on its substantiality. *Campbell*, 265 Ark. 77, 576 S.W.2d 938. Here, the jury clearly disregarded the appellant's expert testimony and believed Morino's. This is within the jury's province. Thus, we reject appellant's argument on this point.

Appellant's second argument generally concerns whether

the jury was improperly exposed to certain remarks made by the prosecutor and his other questions and testimony that dealt with what disposition would be made of appellant if appellant was found not guilty by reason of insanity. In his brief, appellant sets out four separate incidents but his first and main contention seems to focus on the prosecutor's cross-examination of one of appellant's psychologists, Dr. Martin. That short colloquy was as follows:

> Q. I certainly hope, Doctor, that the jury thinks that if the defendant is schizophrenic, he's not supposed to be in prison. You don't believe that, do you?
> A. I believe that when a person is schizophrenic and actively schizophrenic and in need of treatment to help control those symptoms, they need to be in as controlled a setting as necessary to effect that treatment . . . We think in terms of treatment as being from the least restrictive to the most restrictive. The least restrictive form of treatment is voluntary outpatient care. It's the kind of care that you use, when you go to your family doctor. That's the least restrictive form of care. The most restrictive form of care is when either there is a civil or a criminal commitment. A person is placed in an institutional setting against their will and receives care, even though they don't voluntarily want it. That's the most restrictive.
> Q. That can't be done in Arkansas, can it?

Actually, in reading the prosecutor's questions, we are not sure what point he was attempting to make. Nonetheless, appellant's counsel objected on the basis that the prosecutor misstated the law by stating the prosecutor was trying to say that "you can't criminally commit somebody to the penitentiary." The prosecutor responded, saying "he didn't say that." At that point, appellant moved for a mistrial. In denying appellant's objection and motion, the trial judge resolved the matter by instructing the jury to disregard the disputed questions and answer and in addition admonished the jury as follows:

> As I said, the jury does not have the responsibility to determine what kind of treatment is supposed to be given a person if he is mentally incompetent. That's not put before you. What's before the jury is the guilt or innocence of Mr.

Robertson on a capital felony charge. That's what's before the jury.

■ We have held that the jury is not to be told the options available to the trial court when a defendant is found not guilty by reason of mental disease or defect. *Love* v. *State*, 281 Ark. 379, 664 S.W.2d 457 (1984). Here, the trial judge steered the state and the defense from pursuing any such line of questions by agreeing with appellant's objection and clarifying for the jury that its duty is limited only to determining appellant's guilt or innocence. In view of the rather ambiguous discourse between the prosecutor and Dr. Martin and the skillful manner by which the trial judge instructed the jury on its duty, we simply cannot conclude prejudicial error occurred.

The second incident appellant argues under his second point for reversal again involves the prosecutor's cross-examination of Dr. Martin. Martin was asked to categorize the appellant as to what type of schizophrenic he would be, and he put appellant in a group that could be stable on medication, if closely monitored. The prosecutor then asked if by making this categorization Dr. Martin assumed appellant would not use drugs again, and if appellant did, would he become psychotic. Dr. Martin said that it was very likely, to which appellant objected because appellant's future treatment was irrelevant. The trial judge ruled that this line of questioning was brought out on direct examination and that the prosecutor was permitted to ask such questions.

■ In considering this point, we note that appellant's abstract of record fails to reveal either his objection or the court's ruling. In any event, our examination of the transcript in this capital murder case reflects that Dr. Martin, on direct examination, did, indeed, testify to the appellant's use of drugs and his probability of recurrence of psychotic symptoms. After appellant opened this line of questioning, the state certainly was allowed to respond. *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988).

■ Appellant's third incident involves the prosecutor's closing remarks that the appellant was a bomb and the only way to keep him from going off was to put him in prison. Appellant failed to object to this remark, so we do not discuss it on appeal. As we have said before, even in death cases, the appellant must make an objection below to raise the issue on appeal. *See Fretwell* v.

*State*, 289 Ark. 91, 708 S.W.2d 630 (1986).

Appellant's fourth complaint deals with the prosecutor's following remarks in his closing argument:

> First, we have to assume he wasn't on any type of drugs. . . . There are three reasons that experts have come out with that can explain psychotic behavior. One of the major reasons is substance abuse, gasoline sniffing, butane sniffing, any type of chemical like that, bug spray, which he admitted to having sniffed in prison. . . . The other reason he would be psychotic at times would be delusional disorders. A person can go out and get high on drugs, and if it alters their brain to the point they're disabled mentally and can't control their actions, I mean totally lack capacity, did you know they're not guilty!?

Appellant objected stating that voluntary intoxication was not a defense and the prosecutor's remarks misstated the law. He also said the jury was asked improperly to speculate that the appellant was on some substance.

■ From our review, the prosecutor's comments seem more to favor appellant than hurt him. His remarks suggest that if appellant suffered from voluntary drug abuse that such was a valid defense to the crime he committed. Also, in reviewing the prosecutor's remarks in full, he clearly stated that he was not arguing the appellant was high on drugs at the time of the crime. We simply fail to see how these remarks erroneously prejudiced the appellant. The appellant must demonstrate actual prejudice and this court will not reverse absent a showing of that prejudice. *Caldwell* v. *State*, 295 Ark. 149, 747 S.W.2d 99 (1988). Because appellant has failed to show prejudice, we uphold the trial court's rulings on appellant's objection and motion for mistrial on this point.

Under his second point, appellant makes an additional argument. At trial appellant requested a jury instruction stating the procedure to be followed if the appellant was found not guilty by reason of mental defect or disease. In accordance with our case law, the trial judge properly denied appellant's request. *See, e.g.*, *Love*, 281 Ark. 379, 664 S.W.2d 457. The appellant now asks this court to overrule our prior holdings that the jury is not to be told

the options available to the trial court when a defendant is found not guilty by mental defect or disease. We have recently declined such an invitation and do so again. *Madison* v. *State*, 287 Ark. 179, 697 S.W.2d 106 (1985).

Appellant's final argument is that, in giving the jury instruction regarding the sentence of life without parole in this capital murder case, the trial court erred in refusing to delete the words "without parole." In support of his contention he cites *Andrews* v. *State*, 251 Ark. 279, 472 S.W.2d 86 (1971), for the proposition that a jury should not be instructed on matters concerning parole.

We have, of course, repeatedly held that the trial court should not attempt to explain matters concerning parole. *Starr* v. *State*, 297 Ark. 26, 759 S.W.2d 535 (1988); *Pruett* v. *State*, 282 Ark. 304, 669 S.W.2d 186 (1984). Here, the trial court in no way explained parole or answered any inquiries from the jury on the subject. The *Andrews* case and its progeny do not stand for the proposition that a trial court cannot merely recite to the jury that capital murder is punishable by imprisonment for life without parole, nor is the jury prevented from receiving a verdict form reflecting that language. The trial court properly rejected appellant's argument in this respect.

Pursuant to Ark. Sup. Ct. R. 11(f), we have reviewed the record and objections made below and find no reversible error.