SLIP OPINION

Cite as 2014 Ark. 296

# SUPREME COURT OF ARKANSAS

No. CR-94-358

| | |
|---|---|
| TERRICK TERRELL NOONER<br><div align="right">APPELLANT</div> | **Opinion Delivered** JUNE 26, 2014 |
| V. | MOTION TO RECALL DIRECT-APPEAL MANDATE |
| STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | <u>DENIED</u>. |

**DONALD L. CORBIN, Associate Justice**

Appellant, Terrick Terrell Nooner, moves this court to recall the mandate that this court issued on direct appeal affirming his conviction for capital murder and his sentence of death by lethal injection. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995), *cert. denied*, 517 U.S. 1143 (1995). Nooner asks this court to vacate his death sentence and remand for resentencing on the ground that this court failed to sua sponte discover on direct appeal two fundamental errors that occurred at trial on matters essential to the consideration of the death penalty, thereby amounting to a defect or breakdown in the appellate process. Nooner contends that both the Eighth Amendment to the United States Constitution and this court's precedent independently require recall of the mandate with respect to the jury's special verdict on mitigating evidence. In addition, Nooner contends that the interests of justice favor recalling his mandate. Because this case involves a sentence of death, jurisdiction is properly in this court pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2013). We conclude that

Nooner fails to demonstrate extraordinary circumstances to justify recall of the direct-appeal mandate; therefore, we deny his motion.

## I. *Facts and Procedural History*

The procedural history of Nooner's case spans over a twenty-year period and encompasses numerous decisions on direct and collateral review from this court and the federal courts on multiple issues. We recite the procedural history here as it relates specifically to the issues of mitigating evidence raised in the instant motion, and as it relates generally to our later discussion of what Nooner terms an equitable claim to recall the mandate based on the interests of justice.

## A. Trial

Nooner was tried by a jury for capital murder committed during the course of an aggravated robbery and theft of property at a laundromat in Little Rock during the early morning hours of March 16, 1993. Evidence at trial showed that Scot Stobaugh was found, with the contents of his pockets emptied, lying face down in a pool of blood. He had been shot seven times at close range, twice in the arm and five times in the back. During the guilt phase of the trial, Nooner's stepfather, Terry Hendricks, testified that Nooner had spent the night at home with him on the night of the murder. Despite this alibi testimony from Hendricks, the jury found Nooner guilty.

During the penalty phase, Nooner called Hendricks as his only witness. Hendricks testified that Nooner was twenty-two years old at the time of the murder and had been removed from home when he was fourteen as a result of child-abuse charges brought against

Nooner's mother. He stated that Nooner was placed in various foster homes and was eventually sent to Rivendell psychiatric clinic for several months. Hendricks stated that Nooner had a tenth-grade education, began abusing alcohol when he left home, and had a two-year-old son. Hendricks explained that he was just beginning to redevelop a relationship with Nooner since his removal from the home. He stated that he and his wife provided approximately eighty percent of the support for Nooner's child, but that Nooner "was crazy about his son." In sum, Hendricks testified that Nooner had a troubled childhood, that he abused alcohol, and that he had recently become a father. Despite this testimony, the jury unanimously found that, while two aggravating circumstances existed beyond a reasonable doubt, there was no evidence of any mitigating circumstances. The jury unanimously found further that the aggravating circumstances justified beyond a reasonable doubt a sentence of death.

## B. Subsequent Procedural History

This court affirmed Nooner's conviction and death sentence on direct appeal. *Nooner*, 322 Ark. 87, 907 S.W.2d 677, *cert. denied*, 517 U.S. 1143 (1996).

Nooner then filed a petition for postconviction relief pursuant to Rule 37 wherein he asserted fundamental error in his trial as well as ineffective assistance of counsel for, among other things, failure to pursue a mental evaluation that would have produced mitigating evidence for the penalty phase of his trial. This court affirmed the circuit court's denial of postconviction relief. *Nooner v. State*, 339 Ark. 253, 4 S.W.3d 497 (1999). In so doing, this court noted that the trial court carefully considered the testimony of Nooner's trial counsel

that they had carefully contemplated whether to request a mental evaluation and that they did, in fact, present mitigating evidence of Nooner's troubled past through the testimony of Nooner's stepfather. *Id.* This court therefore concluded that Nooner had not established that trial counsels' decision not to request a mental evaluation constituted ineffective assistance of counsel. *Id.*

Nooner filed a federal habeas petition challenging, among other things, the effectiveness of his trial counsel for failing to seek a mental evaluation that would have produced evidence of mitigating circumstances. On appeal, the Eighth Circuit Court of Appeals affirmed the district court's denial of the petition, determining that the record supported trial counsels' judgment not to pursue psychiatric testing for purposes of mitigation and that this court's conclusion that trial counsels' judgment did not render counsel ineffective was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *Nooner v. Norris*, 402 F.3d 801 (8th Cir. 2005), *cert. denied*, 547 U.S. 1137 (2006).

Nooner filed a subsequent petition for writ of habeas corpus, seeking an order permitting him to undergo a complete mental–health evaluation. The Eighth Circuit Court of Appeals granted a certificate of appealability and reversed and remanded the district court's determination that Nooner's petition was a second, or successive, petition under 28 U.S.C. § 2244(b). The Eighth Circuit found that the bar on a second, or subsequent, habeas petition did not apply to a petition raising claims of incompetency based on *Ford v. Wainwright*, 477 U.S. 399 (1986), and of mental retardation based on *Atkins v. Virginia*, 536 U.S. 304 (2002), if the petition was filed as soon as the claims were ripe. *Nooner v. Norris*, 499 F.3d 831 (2007)

(citing *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), and *Pannetti v. Quaterman*, 551 U.S. 930 (2007)). On remand to the district court, Nooner's petition was dismissed without prejudice, based on the State's agreement to a court-ordered mental evaluation. *Nooner v. Norris*, No. 5:96-cv-00495-JLH (E.D. Ark. Nov. 16, 2007) ECF No. 138.

Nooner later sought and received permission to file a second federal-habeas petition, wherein he alleged for the first time his actual innocence, among other grounds for relief. His claim of innocence was based, in part, on (1) the recantation of trial testimony from one witness; (2) the recantation of statements that his accomplice, who did not testify at trial, made to police at the time of the murder; and (3) expert evidence measuring an individual's height captured on crime-scene-surveillance video. The Eighth Circuit Court of Appeals affirmed the federal district court's denial of Nooner's second habeas petition, rejecting the theory that the expert evidence was new evidence and emphasizing the internal inconsistencies in both recantations as well as the general skepticism with which courts view recantations made long after the fact. *Nooner v. Hobbs*, 689 F.3d 921 (8th Cir. 2012), *cert. denied*, ___ U.S. ___, 134 S. Ct. 58 (2013).

Nooner filed the instant motion to recall his direct-appeal mandate on December 13, 2012, just a few weeks after the Eighth Circuit Court of Appeals had affirmed the denial of his second habeas petition. While the instant motion was pending in this court, the Eighth Circuit Court of Appeals entered a written order on May 28, 2013, granting the State's motion to dissolve the stay of execution that had been entered on September 14, 2007, in *Nooner v. Norris*, No. 5:08-cv-00003-JLH (8th Cir. May 28, 2013) ECF No. 120.



Cite as 2014 Ark. 296

II. *Motion to Recall Direct-Appeal Mandate*

In the present motion, Nooner contends that both the Eighth Amendment and this court's precedent independently require recall of the mandate that this court issued in 1995 in Nooner's direct appeal. Nooner asserts that there are two instances of a breakdown in the appellate process that he contends would justify recalling the mandate. First, based on *Williams v. State*, 2011 Ark. 534, and the case on which it relied, *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004), Nooner asserts that the jury in his case committed reversible error when it marked the special-verdict forms to indicate that there was no evidence of mitigating circumstances because he did present mitigating evidence through his stepfather's testimony that Nooner was twenty-two years of age at the time of the offense, that he had a troubled childhood, that he had abused alcohol, and that he had family ties and responsibilities. Second, Nooner asserts that the verdict forms and the prosecutor's argument impermissibly instructed and directed the jury to evaluate the existence of mitigating circumstances only if they existed "at the time of the murder." Additionally, Nooner asserts that the interests of justice and strong equitable considerations favor recall of the mandate because Nooner would then be able to provide "voluminous, weighty, and unambiguously mitigating evidence in the event of a resentencing."

This court agreed to take the motion as a case, and the parties have now filed briefs for our consideration.

A. Standard for Reviewing Motions to Recall Mandate

Before addressing the merits of Nooner's arguments in support of his motion to recall the direct-appeal mandate, we first note Nooner's initial contention that, despite the use of mandatory language he describes as "restrictive dicta" in some of this court's earlier cases, he need not satisfy the three-part test first announced in *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003), to demonstrate extraordinary circumstances that warrant recall of his direct-appeal mandate. Nooner argues that this court definitively held that in, *Wooten v. State*, 2010 Ark. 467, 370 S.W.3d 475, and *Williams*, 2011 Ark. 534, the presence of a breakdown in the appellate process may in and of itself constitute extraordinary circumstances warranting a recall of this court's mandate. The State counters that Nooner incorrectly expands the once sui generis standard for recall of a mandate first explained in *Robbins* to require that a movant only has to demonstrate an error in the appellate process to be entitled to this extraordinary remedy.

We acknowledge, as Nooner points out, that our cases have been inconsistent as to whether all three factors first announced in *Robbins* must be satisfied in every case; but, we agree with the State that our decision in *Robbins* is patently clear that recall of our mandate is an extremely narrow remedy. Indeed, we stated in *Robbins* that recall of our mandate is to be granted only in extraordinary circumstances as a last resort to "avoid a miscarriage of justice" or "to protect the integrity of the judicial process." *See Robbins*, 353 Ark. at 563, 114 S.W.3d at 222 (quoting *Calderon v. Thompson*, 523 U.S. 538, 558 (1998), and *Demjanjuk v. Petrovsky*, 10 F.3d 338, 357 (6th Cir. 1993)).

Regardless of any inconsistencies in our decisions concerning the mandatory satisfaction of the three *Robbins* factors, what has remained consistent in these cases has been a discussion of the three *Robbins* factors and this court's overarching concern that we will reopen a case only to address an "error in the appellate process," meaning an error that *this court* made or overlooked while reviewing a case in which the death sentence was imposed. *See, e.g.*, *Engram v. State*, 360 Ark. 140, 147, 148, 200 S.W.3d 367, 369, 370 (2004) (observing that the purpose of recalling the mandate in *Robbins* was to "correct an error in the appellate process" and emphasizing that "the *Robbins* case hinged on the fact that an error was made *during this court's review*, and the recall of the mandate was intended to give *this court* an opportunity to address an issue it should have addressed before"). We have also been consistent in considering motions to recall mandates in criminal cases only where the death penalty has been imposed. *See, e.g.*, *Maxwell v. State*, 2012 Ark. 251 (per curiam).

As to Nooner's claim that he need only show a defect or breakdown in the appellate process in order to warrant recall of his direct-appeal mandate, we apply the definition of "error in the appellate process," as that term was first used in *Engram*, which is "an error alleged to have been made by this court during the course of its appellate review" of a death-penalty case, and we emphasize that such error is to be distinguished from an error that "should have been [raised] to the trial court" and could not be "considered as falling within one of the so-called *Wicks* [*v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980)] exceptions," or within our independent review of death cases pursuant to Rule 4-3 of the Arkansas Supreme Court Rules, and Rule 10 of the Arkansas Rules of Appellate Procedure–Criminal. *Engram*,

360 Ark. at 148, 151, 150, 200 S.W.3d at 370, 373, 372. Because we conclude, for reasons explained later herein, that Nooner cannot satisfy the first factor of demonstrating error in the appellate process, any further discussion of eliminating the other factors would be advisory in this case.

The status of the three *Robbins* factors thus remains the same as it did prior to the present case—the three *Robbins* factors are relevant factors for this court to consider when presented with a motion to recall a mandate in a death-penalty case, although strict satisfaction of all three factors is not required. Strict satisfaction is not required because this court has the inherent authority to recall its mandate in extraordinary circumstances. *See Robbins*, 353 Ark. 556, 114 S.W.3d 217. As noted in *Robbins*, and first stated by the United States Supreme Court in *Calderon*, extraordinary circumstances are required due to "'the profound interests in repose' attaching to the mandate" of an appellate court. *Robbins*, 353 Ark. at 563, 114 S.W.3d 222 (quoting *Calderon*, 523 U.S. at 550). The inherent power of an appellate court to recall its mandate should therefore be used sparingly as a last resort; it is to be "held in reserve against grave, unforseen contingencies." *Id*. And because the inherent act of this court in recalling its mandate is a discretionary act, or in the words of the Eighth Circuit Court of Appeals "an act of grace by the state that is not constitutionally mandated," *Wooten v. Norris*, 578 F.3d 767, 784 (8th Cir. 2009), this court would do well to maintain some means of an internal check on that discretion. Discussion of the three *Robbins* factors is a valid means then of ensuring that our discretionary act is not exercised arbitrarily. Discussion of the three *Robbins* factors is thus an appropriate means of determining whether extraordinary

circumstances exists to warrant recall of our mandate, even though our inherent power to recall our mandate is not limited by strict satisfaction of all three factors in all cases.

### B. Failure to Consider Evidence of Mitigating Circumstances

Turning now to the merits of the motion to recall the mandate, we consider Nooner's first point in support of his motion. Nooner contends that because the jury checked option D of Form 2 (Form 2 D), which is the jury's special-verdict form for mitigating circumstances, stating that "[t]here was no evidence of any mitigating circumstance," the jury impermissibly failed to consider or give meaningful effect to the relevant mitigating evidence he had presented. Nooner alleges that, based on the jury's completion of Form 2 D, fundamental error occurred in his trial that this court failed to discover in its independent review on direct appeal. Nooner alleges further that this error is in a narrow class of manifest, fundamental defects in a death-sentencing proceeding that may be raised at any time, including on a motion to recall the mandate. In support of the foregoing argument, Nooner relies on this court's decisions in *Williams*, 2011 Ark. 534, and the case on which *Williams* relied, *Anderson*, 357 Ark. 180, 163 S.W.3d 333. He asserts that *Williams* is controlling here and cannot be distinguished from his case. Nooner contends that based on *Williams*, he has demonstrated error in his appellate process and that is all that he need demonstrate to obtain recall of his direct-appeal mandate.

The State first responds that Nooner fails to cite any authority requiring this court to have raised this issue for him when it reviewed his direct appeal in 1995. In the absence of such authority, the State points out that Nooner relies on this court's precedent from 2011

in *Williams* to establish a defect in his 1995 direct appeal. According to the State, Nooner erroneously reads *Williams* as holding that, in 2011, long after Nooner's direct appeal in 1995, this court had a duty to sua sponte raise and consider an issue concerning his death sentence that was not error under then existing law. The State thus argues that Nooner erroneously reads *Williams* as having transformed the once extraordinary procedure for recalling this court's mandate into a substitute for review of sentencing error in capital cases that can be raised at any time without complying with the time limits and procedural requirements for direct or belated appeals. The State asserts that this turns the principle of finality attached to appellate decisions on its head. To the extent that *Williams* holds that sentencing errors in capital cases can be raised at any time, the State asserts that *Williams* renders the extraordinary remedy of recalling the mandate less than ordinary and requests that we therefore overrule *Williams*.

A close review of *Williams* is essential to resolution of this case. In *Williams*, this court was presented with a motion to recall a direct-appeal mandate that was based on two grounds: ineffective assistance of direct-appeal counsel and mental retardation. This court granted the motion and reversed the death sentence and remanded "for new sentencing based not on the specific arguments of Williams, but because there was indeed a breakdown in the appellate process in this death-penalty case." *Williams*, 2011 Ark. 534, at 1. The breakdown in the appellate process this court referred to was that "the jury in Williams's case erred in marking section D of Form 2, indicating that no evidence of mitigation was offered, where evidence was clearly presented." *Id*. at 4. Raising this issue sua sponte, this court stated that it had

"previously reversed a death sentence and remanded for resentencing based upon the same error," and cited *Anderson*, 357 Ark. 180, 163 S.W.3d 333. *Id.* at 4.

In reviewing Nooner's argument that *Williams* controls his case and requires recall of Nooner's direct-appeal mandate, we realize that our decision in *Williams* was made in error. In recognizing our error, we are guided by the words of this court in *Whittington v. Flint*, 43 Ark. 504 (1884):

> A rule of decision once deliberately adopted and declared ought not to be disturbed "by the same court, except for very cogent reasons and upon a clear manifestation of error." But there are cases which "ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error."

*Id.* at 513–14 (quoting 1 *Kent's Comm.*, 476–77).

We are therefore of the opinion that *Williams*, 2011 Ark. 534, is "wrong, and that more good than harm would result from changing it at this time, and it is overruled." *Brickhouse v. Hill*, 167 Ark. 513, 519, 268 S.W. 865, 867 (1925). We therefore overrule *Williams v. State*, 2011 Ark. 534 in its entirety.

Our error in *Williams* was three-fold. First, we did not acknowledge that, according to the law as it existed when we decided Williams's direct appeal in 1995, there was no error in the way the jury had completed the verdict form on mitigating circumstances at Williams's trial. *See, e.g.*, *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied*, 479 U.S. 1101 (1987) (rejecting argument that jury's finding that "[t]here was no evidence of any mitigating circumstance" indicated that the jury failed to consider mitigating evidence that was offered). Second, despite the applicable precedent of *Hill*, we applied the holding announced in

*Anderson*, 357 Ark. 180, 163 S.W.3d 333, which was handed down in 2004, well after Williams's direct appeal in 1995, without any discussion of the propriety of retrospective application of *Anderson* to the collateral attack on the judgment of conviction that Williams had mounted in his motion to recall the mandate or of why *Hill* was not controlling. Third, we did not acknowledge that, from the time of Williams's direct appeal in 1995 to the time of Anderson's direct appeal in 2004, the Arkansas Model Jury Instructions–Criminal used in death–penalty cases had been substantially amended. *Compare* AMI Crim. 1509 Form 2 D (Supp. 1982) ("There was no evidence of any mitigating circumstance"), *with* AMI Crim. 2d 1008 Form 2 D (Supp. 1986) ("No evidence of a mitigating circumstance was presented by either party during any portion of the trial. (Check only if no evidence of a mitigating circumstance was presented.")). (Both Form 2s are reproduced in full for convenience and attached as appendices to this opinion.) Thus, when this court concluded in Williams's motion to recall mandate that by checking option D of Form 2, Williams's jury made "the same error" that Anderson's jury had made—that was an erroneous conclusion on this court's part. Anderson's jury had, in fact, checked option D of Form 2, but it was not the same Form 2 D checked by Williams's jury. Moreover, there was no evidence of jury confusion in Williams's trial as there had been in Anderson's trial. *See Anderson*, 357 Ark. at 222, 223, 163 S.W.3d at 359 (stating that "[w]hat concerns this court in the case at hand is the confusion on the part of the jury which apparently led the jury members to disregard *any* consideration of mitigating circumstances," and noting that "[t]he jurors' confusion in the instant case is

further evidenced by their request to the circuit judge for a definition of mitigating circumstances").

Because these errors in *Williams* result in a decision that stands for the proposition that this court will, on a collateral challenge to a judgment of conviction and sentence that has been affirmed and become final, apply our precedent retrospectively without analysis to find error in a previous decision that was consistent with then existing law, we have no choice but to overrule *Williams*, 2011 Ark. 534 in its entirety. The doctrine of stare decisis yields when there has been palpable error in legal analysis. *See Kincade v. C & L Rural Elec. Coop. Corp.*, 227 Ark. 321, 299 S.W.2d 67 (1957). In overruling *Williams*, we do not disregard the doctrine of stare decisis but recognize that we are not bound to perpetuate an erroneous decision "when the great importance of the question as it now presents itself could not be foreseen." *Brickhouse*, 167 Ark. at 520, 268 S.W. at 867.

Because we have overruled *Williams*, the question now is whether Nooner can otherwise demonstrate the error he alleges occurred in his trial—that the jury's finding that "[t]here was no evidence of any mitigating circumstance" indicates that the jury violated the Eighth Amendment and disregarded the mitigating testimony he had presented of his troubled childhood, alcohol abuse, his youth at the time of the murder, and his family ties and responsibilities. A review of our cases addressing the jury's consideration of mitigating evidence in death cases leads us to conclude that Nooner cannot demonstrate the error he alleges.

Nooner's jury was instructed in accordance with Arkansas Model Jury Instruction–Criminal 1509, the same instructions and verdict forms used in Williams's trial. As previously noted then, *Hill*, 289 Ark. 387, 713 S.W.2d 233, is the controlling precedent for Nooner's case. In *Hill*, this court concluded as follows when the jury found that "[t]here was no evidence of any mitigating circumstance":

> We do not interpret the jury's action to mean that they did not consider the evidence of mitigation that was offered. Rather we find the jury determined that the appellant's youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found. No error was committed.

*Id.* at 396, 713 S.W.2d at 238.

*Hill*, 289 Ark. 387, 713 S.W.2d 333, has been cited with approval by this court many times. *See, e.g.*, *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998), which the State cites for the proposition that there is another reasonable interpretation when the jury selects option D of Form 2 to find that "[t]here was no evidence of any mitigating circumstance": the jury heard and considered the evidence, but simply concluded, based on the weight or credibility of that evidence, that it was not mitigating evidence. In *Hill*, 331 Ark. 312, 962 S.W.2d 762, the appellant presented evidence that he had turned his life around while he was in prison, and this court quoted well-established law as follows:

> The State argues that even though Appellant could have changed his life in prison, the jury still could have concluded that this change was not a mitigating factor in his crime. We agree.
>
> This court has previously held that "[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance." *Bowen* [*v. State*, 322 Ark. 483,] at 497, 911 S.W.2d [555,] at 561 [(1995)] (citing *Duncan v. State*, 291 Ark. 521,

726 S.W.2d 653 (1987), and *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied*, 479 U.S. 1101, and *cert. denied*, 484 U.S. 873 (1987)). This court held further that the jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it the jurors believe to be true. *Id.* (citing *Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863, *cert. denied*, 504 U.S. 976 (1992), and *Robertson v. State*, 304 Ark. 332, 802 S.W.2d 920 (1991)).

. . . .

Here, the fact that after consideration, the jury did not regard Appellant's change as a mitigating factor was not an error, as the jury was free to believe or disbelieve Appellant's witness.

*Id.* at 317–18, 962 S.W.2d at 764.

Nooner replies to the State's citation to *Hill* with the argument that *Anderson*, 357 Ark. 180, 163 S.W.3d 333, implicitly overruled *Hill*, 331 Ark. 312, 962 S.W.2d 762. Citing *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574 (1997), Nooner argues that an earlier decision that has not been expressly overruled is implicitly overruled by subsequent decisions to the contrary. *Anderson* is not contrary to the *Hill* cases; it simply involved different death-penalty instructions and verdict forms. *Compare* AMI Crim. 1509, *with* AMI Crim. 2d 1008.

A comparison of the two verdict forms reveals that *Anderson* was not contrary to the law announced in both *Hill* cases, but was simply a correct result based on the forms and instructions used in Anderson's trial. Indeed, *Anderson* relied on the new language of the amended form to hold that the jury's decision to check Form 2 D was clearly in error. There can be no doubt that, when mitigating evidence is in fact presented to a jury, it is clear error for the jury to check AMI Crim. 2d 1008 Form 2 D and to disregard the parenthetical instruction "[c]heck only if no evidence of a mitigating circumstance is presented." To

support its holding with respect to Form 2 D, the court in *Anderson* relied on the new language from option C of Form 2: "While the evidence may not have *established* that a mitigating circumstance 'probably existed' for the murder, it was certainly *presented* for that purpose." *Anderson*, 357 Ark. at 221, 163 S.W.3d at 358 (emphasized language was added by amendment of option C of Form 2, AMI Crim. 2d 1008). Noticeably absent from *Anderson* is any discussion of, or citation to, the *Hill* cases. Our holding in *Anderson* was an extension of the change in the amended Form 2.[1] Because of the amended language in Form 2, the *Anderson* holding did not contravene the *Hill* holdings. *Anderson* was decided in accordance with the amended language of the applicable verdict form and was not, therefore, contrary to the *Hill* cases. Thus, we disagree with Nooner's assertion that *Anderson* overruled *Hill*, 331 Ark. 312, 962 S.W.2d 762, by implication.

We find additional support for our conclusion that the *Hill* cases have not been overruled by implication because this court continues to cite them with approval even after *Anderson* was decided. *See, e.g.*, *Decay v. State*, 2009 Ark. 566, 352 S.W.3d 319; *Wertz v. State*, 374 Ark. 256, 287 S.W.3d 528 (2008); and *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). This court has rejected the proposition that a case is impliedly overruled when

---

[1]The point at which the dissent's view diverges from the majority view is in the analysis of the amended language in the verdict forms. The dissent sees the amended form as being only "slightly reworded," while the majority sees the new language as a substantial and material amendment. It is the differing language between the two forms, rather than a misapplication of the law to the facts, that explains the differing results in the *Anderson* and the *Hill* cases.

this court continues to cite it with approval. *See Goodwin v. Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989).

We find even further support for our conclusion that the *Hill* cases are still good law in *Dansby v. Norris*, 682 F.3d 711 (8th Cir. 2012), *cert. granted and judgment vacated sub nom. on other grounds by Dansby v. Hobbs*, ___ U.S. ___, 133 S. Ct. 2767 (2013). The Eighth Circuit Court of Appeals addressed *Anderson*, *Williams*, and *Hill*, and concluded that *Hill* is good law and consistent with the Eighth Amendment. Its reasoning is as follows:

> Dansby directs our attention to *Williams v. State*, 2011 Ark. 534, where the Arkansas Supreme Court held that a jury's decision to check Option D of Form 2 in a capital case was reversible error, because the defendant had presented "unrebutted evidence in mitigation." *Id.* at 5. The court reasoned that if the jury did not believe that the evidence presented "rose to the level of mitigating evidence," then it should have marked Option C of Form 2. *Id.* at 6. Applying its precedent in *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004), the court held that the jury's completion of Form 2 meant that "the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Williams to death solely based on the aggravating circumstance, which is reversible error." *Williams*, 2011 [Ark. 534], at 6.

> We note first that while *Williams* was decided after a panel of this court ruled on Dansby's application to expand the certificate of appealability, *Williams* announced no new rule of law. *Williams* is an unpublished decision that applied the Arkansas court's 2004 decision in *Anderson*.[2]

> Reviewing the matter nonetheless, and assuming for the sake of analysis that the claim is not procedurally defaulted, we conclude that Dansby has not made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). *Williams* does not cite federal law, and

---

[2]We note that although the editors at West Publishing Company chose not to report the *Williams* opinion in its *Southwestern Reporter*, all opinions of this court issued on or after July 1, 2009, have precedential value and are officially published by this court on its website.

neither does *Anderson*. It is not even clear that these state court decisions purport to apply the Eighth Amendment rather than Arkansas law. . . .

. . . .

Dansby appears to propose a different Eighth Amendment rule—namely, that if the defendant submits evidence that he claims to be mitigating, then a failure of the jury to find that there was evidence of a mitigating circumstance violates the Eighth Amendment. Dansby identifies no decision of the Supreme Court of the United States that so holds, and the Arkansas Supreme Court actually rejects the proposition. In *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998), the state supreme court held that " '[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance.' " *Id*. at 764 (quoting *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555, 561 (1995)). A jury, the court explained, may reject all or any part of a defendant's mitigating evidence. 962 S.W.2d at 764. In this very case, the state supreme court cited *Hill* for that point in dismissing Dansby's claim that his counsel was ineffective at the penalty phase because the jury found no mitigating factors. 84 S.W.3d at 862–63. Dansby's jury was free to reject his proposed mitigating evidence. That the jury marked Option D on the verdict form does not translate into a substantial showing of a constitutional violation.

*Dansby*, 682 F.3d at 725–26.

The Eighth Circuit has thus rejected the very argument raised here, which is that the interplay between *Williams*, *Anderson*, and *Hill*, 331 Ark. 312, 962 S.W.2d 762, demonstrates that error occurred in violation of the Eighth Amendment when the jury found that there was no evidence of any mitigating circumstance even when a defendant had presented relevant mitigating evidence. Here, the bulk of Nooner's mitigating evidence came from his stepfather, Mr. Hendricks, who also provided alibi testimony for Nooner during the guilt phase. Clearly, when the jury found Nooner guilty, they discounted Mr. Hendricks's credibility, and it is therefore a reasonable possibility that the jury simply weighed Mr.

Hendricks's testimony in mitigation but rejected it as the jury was entitled to do under *Hill.* *See, e.g.*, *Wertz v. State*, 374 Ark. 256, 265, 287 S.W.3d 528, 535 (2008) (citing *Hill* with approval and concluding that "a jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance"). Accordingly, Nooner has not demonstrated that error occurred at his trial with respect to the jury's completion of the special-verdict forms on mitigating evidence, and his motion to recall the mandate is denied because he cannot demonstrate that a breakdown in the appellate process occurred during this court's direct review of his conviction and death sentence.

### C. "At-the-Time-of-the-Murder" Restriction

Nooner argues alternatively that his direct-appeal mandate should be recalled and his death sentence reversed because the sentencing instructions given in his case and the prosecutor's repeated arguments erroneously directed the jury to find and weigh only those mitigating circumstances that existed "at the time of the murder," in violation of the Eighth Amendment under *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated in part on other grounds by Atkins*, 536 U.S. 304, and *Skipper v. South Carolina*, 476 U.S. 1 (1986). At trial and at sentencing, Nooner presented relevant mitigating evidence such as his tumultuous childhood, his history of mental or emotional disturbance, and his maintenance of a meaningful relationship with his father after the murder. However, according to Nooner, the special-verdict form instructed, and the prosecution repeatedly emphasized that the jury could only

consider mitigating circumstances that existed at the time of the murder. Citing the companion cases of *Brewer v. Quarterman*, 550 U.S. 286 (2007), and *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007), Nooner contends that there is a reasonable likelihood that the jury understood the "at-the-time-of-the-murder" instruction to preclude it from considering or giving effect to the mitigating evidence he offered. Under these circumstances, argues Nooner, he has demonstrated an Eighth Amendment violation under *Penry*.

United States Supreme Court precedent has long recognized that a sentencing jury must be able to give a "'reasoned moral response'" to any relevant mitigating evidence when deciding to sentence a defendant to death. *Brewer*, 550 U.S. at 289 (quoting *Penry*, 492 U.S. at 323) (citing *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982)). Thus, the Supreme Court has "repeatedly emphasized that a *Penry* violation exists whenever a statute, or a judicial gloss on a statute, prevents a jury from giving meaningful effect to mitigating evidence that may justify the imposition of a life sentence rather than a death sentence." *Brewer*, 550 U.S. at 289. Furthermore, the Supreme Court has made "[e]qually clear . . . the corollary rule that the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" *Skipper*, 476 U.S. at 4 (quoting *Eddings*, 455 U.S. at 114). When the claim is that an instruction is ambiguous and therefore subject to an erroneous interpretation, "the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way

that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).

Nooner asserts that this issue is within the narrow class of fundamental errors that may be raised in a motion to recall the mandate because the consideration of mitigating evidence is essential to consideration of the death penalty; therefore, this court was obligated to raise this issue sua sponte during its independent review on direct appeal, even in the absence of argument or objection below from defense counsel. Nooner asserts that we should grant recall of the mandate in order to correct this court's failure to discover sua sponte on direct appeal the Eighth Amendment violation that he alleges occurred as a result of the "at-the-time-of-the-murder" restriction in the verdict form and in the prosecutor's closing arguments. The State responds that Nooner fails to establish any obligation on this court's part to have raised and considered this issue sua sponte on direct appeal, and, hence, fails to establish a defect in appellate proceedings to warrant recall of the mandate.

We agree with the State that Nooner has not identified a reversible error that this court was obligated to raise sua sponte on his direct appeal; therefore, he has not demonstrated a breakdown in the appellate process required for the extraordinary circumstances that warrant recall of the mandate. First, based on Arkansas Supreme Court Rule 4-3(h) (1995), which was applicable to Nooner's direct appeal in 1995, the scope of our review of death-penalty cases was limited to rulings on objections decided adversely to him. This limited review presupposed a contemporaneous objection at trial. As previously noted, this court's

mandatory review in death cases for prejudicial and egregious errors pursuant to Rule 10 is applicable only to cases in which a sentence of death has been imposed after August 1, 2001. *See Newman v. State*, 350 Ark. 51, 84 S.W.3d 443 (2002) (per curiam); *see also State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999). Second, this court has previously concluded that the "at-the-time-of-the-murder" language in the mitigating-circumstances instruction and special-verdict form did not raise an issue subject to review when raised for the first time on appeal under Rule 10 or even as an exception to the contemporaneous-objection rule pursuant to *Wicks*, 270 Ark. 781, 606 S.W.2d 366. *See Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006) (concluding that a challenge to the "at-the-time-of-the-murder" language did not rise to the level of serious error or a matter essential for the jury's consideration of the death penalty).

Nooner concedes that this court denied a similar Eighth Amendment claim on the merits in *Thessing*, 365 Ark. 384, 230 S.W.3d 526, but contends that *Thessing* is not controlling here because "the United States Supreme Court has made clear [that], whether there is a reasonable likelihood that a challenged instruction precluded the jury from considering relevant mitigating evidence is decided in context, on a case-by-case basis, rather than as a per se matter." Nooner does not cite the case in which the Supreme Court made such a clear statement, but simply goes on to distinguish his case from *Thessing* in two respects. First, Nooner focuses on the prosecutor's repeated comments in his case, such as "look at those mitigating circumstances. Ask yourself whether those existed at the time of this savage,

vicious, cruel murder." Nooner points to approximately five instances during closing arguments, at both the guilt phase and the penalty phase of the trial, in which the prosecutor made similar comments. He argues that those repeated comments make it more likely that the jury applied the instruction in such a way that it failed to give effect to the mitigating evidence he had offered that was not in existence at the time of the murder. Second, he points out that his jury found that no mitigating circumstances existed, while Thessing's jury found that one mitigating circumstance existed. Therefore, he contends, his jury's conclusions do not refute his hypothesis that the "at-the-time-of-the-murder" instruction constrained its consideration of the relevant mitigating evidence he had offered.

Even if we acknowledge a distinction between *Thessing*, in which the jury found one mitigating circumstance, and Nooner's case, in which the jury found no mitigating circumstances, we still do not think there is a reasonable likelihood that the jurors' interpretation of the trial court's instructions prevented their consideration of his troubled childhood, his recently established relationship with his father, and his having become a father himself. Nooner's Form 2 listed all three potential mitigators under each option: A, B, and C; moreover, each option included a blank space for the jury to write in any additional mitigators that they might have found. Options A and C included the language challenged by Nooner, "at the time of the murder," but option B did not. Thus, if one or more members of the jury felt constrained by the temporal language challenged here, they had the opportunity of so indicating by checking option B of Form 2. The jury did not, however,

select any of the potential mitigators under option B, nor did the jury write in any other mitigators not specifically listed. We do not perceive the prosecutor's comments as problematic because the jury was instructed that the opening statement, remarks by counsel during trial, and closing argument are not evidence. Arguments of counsel generally carry less weight with a jury than instructions from the court, as the former are usually billed in advance to the jury as matters of argument, not evidence, and the latter are viewed as definitive and binding statements of the law. *See Boyde*, 494 U.S. 370. The jury is presumed to have followed the instructions given by the court. *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003).

Under the foregoing facts, Nooner has not demonstrated a likelihood that the jury felt inhibited from considering the relevant mitigating evidence. We see a marked distinction between the instant case and the companion cases of *Brewer* and *Abdul-Kabir* on which Nooner relies. Those cases involved a refusal of the trial court to give any instruction on mitigating considerations. In comparison, Nooner has demonstrated, at best, only a possibility that the jury felt constrained by the "at-the-time-of-the-murder" instruction and argument. "[A] capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility" that the jury was inhibited from considering relevant mitigating evidence. *Boyde*, 494 U.S. at 380. "There is, of course, a strong policy in favor of accurate determination of the appropriate sentence in a capital case, but there is an equally strong

policy against retrials years after the first trial where the claimed error amounts to no more than speculation." *Id.*

Even assuming that *Thessing*, 365 Ark. 384, 230 S.W.3d 526, is not controlling on a per se basis, Nooner has not identified a breakdown in the appellate process to warrant a recall of his direct-appeal mandate.

### D. Interests of Justice Demand Recall

As a final point in support of recalling his direct-appeal mandate, Nooner contends that the interests of justice, as well as this court's "steadfast commitment to ensuring fundamental fairness in capital cases," require that his motion be granted, that his death sentence be vacated, and that his case be remanded for resentencing where a properly instructed jury should have the opportunity to consider all the evidence supporting a life sentence in his case. He argues further, in reply, that he would be able to provide "voluminous, weighty, and unambiguously mitigating evidence in the event of resentencing." In his brief, he refers primarily to the 2007 report of Dr. Xavier Amador, Ph.D., which he attached to his motion and his brief, that documents how Nooner suffered chronic physical abuse and neglect during his childhood and that he also has a long and well-documented history of severe mental illness and was ultimately diagnosed with Schizophrenia. He also refers to the confession his accomplice made during federal-habeas proceedings that it was he, not Nooner, who actually committed the murder. *See* Ark. Code Ann. § 5-4-605(5) (Repl. 2013) (specifying that it is

a mitigating circumstance that "[t]he capital murder was committed by another person and the defendant was an accomplice and his or her participation was relatively minor").

As we observed when reciting the procedural history of this case, the Eighth Circuit Court of Appeals found no merit to Nooner's claim of actual innocence based on his accomplice's recantation of his statements to police and his posttrial confession. *Nooner*, 689 F.3d 921. Nooner has therefore had collateral review of this issue in federal-habeas proceedings, and we are aware of no authority under which justice would demand recalling our direct-appeal mandate under these circumstances and reopening Nooner's case for yet another review of this same issue. On these facts, the posttrial confession of Nooner's accomplice does not warrant recall of the mandate, regardless of whether, had it occurred before trial, a jury could have considered it to be a mitigating circumstance pursuant to section 5-4-605(5).

As for Nooner's claim that he suffers from a severe case of Schizophrenia, we acknowledge his counsel's concession that such an issue is not yet ripe for our consideration until a date for execution is set. We acknowledge further that counsel intends to seek a stay of execution, should one be set, based on the contention that Nooner is incompetent for execution under *Panetti*, 551 U.S. 930, and Arkansas Code Annotated section 16-90-506(c)–(d) (Repl. 2006). We are aware of no authority under which justice would demand that Nooner's claim of incompetency to be executed be heard prematurely by granting the instant motion to recall the direct-appeal mandate.

Cite as 2014 Ark. 296

Because Nooner has had his day in court on his claim of actual innocence based on the confession of his accomplice, we conclude that the interests of justice do not weigh in favor of recalling the mandate; rather, they weigh in favor of the profound interests of repose that attach to an appellate court's mandate. In addition, the interests of justice do not weigh in favor of recalling Nooner's direct-appeal mandate to hear his not-yet-ripe claim of incompentency to be executed.

III. *Conclusion*

Our recitation in section I.B. *infra* of the procedural history of Nooner's case demonstrates that he has had multiple levels of review, both direct and collateral, from both our state courts and the federal courts over a period of almost twenty years. According to these decisions, no fundamental or constitutional error has occurred. Nooner thus attempts to obtain an extraordinary remedy of last resort—a recall of his direct-appeal mandate. The reality is that there is nothing extraordinary about Nooner's trial or his postconviction and collateral-review proceedings.

This court's procedure for recalling its direct-appeal mandate in death-penalty cases has been described as "an act of grace by the state that is not constitutionally mandated." *Wooten*, 578 F.3d at 784. We must therefore be steadfast to our requirement that the remedy be granted only in the most extraordinary of circumstances, lest the remedy becomes ordinary and routine, and the finality of our state-court judgments destroyed.

SLIP OPINION

We have considered all of Nooner's arguments, and conclude that none of them demonstrates extraordinary circumstances to justify recalling the mandate in his direct appeal. We therefore deny Nooner's motion.

HANNAH, C.J., and DANIELSON and HART, JJ., dissent.

SLIP OPINION

Cite as 2014 Ark. 296

APPENDIX I

[As used in *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995).]

INSTRUCTION NO. [22 (AMI CRIM. 1509)]
FORM 2

MITIGATING CIRCUMSTANCES

A.　( )　We unanimously find that the following mitigating circumstances probably existed at the time of the murder:

　　　　(Check applicable circumstances and specify any additional ones.)

　　( )　The capital murder was committed while Terrick Terrell Nooner was under extreme mental or emotional disturbance.

　　( )　The youth of Terrick Terrell Nooner at the time of the commission of the capital murder.

　　( )　Terrick Terrell Nooner has a long history of alcohol and drug abuse.

　　( )　Other: Specify in Writing. _____
_____
_____

B.　( )　One or more members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree:

　　( )　The capital murder was committed while Terrick Terrell Nooner was under extreme mental or emotional disturbance.

　　( )　The youth of Terrick Terrell Nooner at the time of the commission of the capital murder.

　　( )　Terrick Terrell Nooner has a long history of alcohol and drug abuse.

　　( )　Other: Specify in Writing. _____

Cite as 2014 Ark. 296

_____
_____

C.     ( )    There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder.

     ( )    The capital murder was committed while Terrick Terrell Nooner was under extreme mental or emotional disturbance.

     ( )    The youth of Terrick Terrell Nooner at the time of the commission of the capital murder.

     ( )    Terrick Terrell Nooner has a long history of alcohol and drug abuse.

     ( )    Other: Specify in Writing. _____
_____
_____

D.     (X)    There was no evidence of any mitigating circumstance.

     (Check if applicable.)

/s/_____
FOREMAN

SLIP OPINION

Cite as 2014 Ark. 296

APPENDIX II

[As used and quoted in *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004).]

AMI CRIM. 2D 1008
FORM 2

A.     (  )     We unanimously find that the following mitigating circumstance(s) probably existed:

. . . .

B.     (  )     One or more members of the jury believed that the following mitigating circumstance(s) probably existed, but the jury did not unanimously agree that such mitigating circumstance(s) probably existed:

. . . .

C.     (  )     There was some evidence presented to support the following circumstance(s). However, having considered this evidence, the jury unanimously agreed it was insufficient to establish that the mitigating circumstance(s) probably existed:

(If any circumstances are checked in this section, you should not complete Section D. Any factor or factors checked in this section should not be checked again in any other section.)

. . . .

D.     (  )     No evidence of a mitigating circumstance was presented by either party during any portion of the trial. (Check only if no evidence of a mitigating circumstance was presented.)

SLIP OPINION

JIM HANNAH, **Chief Justice, dissenting.** Because there is no written proof in the record of this case that the jury considered the evidence of mitigating circumstances, I must respectfully dissent. A jury must be able to consider, and may not refuse to consider, any relevant mitigating evidence offered by a defendant as a basis for a sentence less than death. *See Buchanan v. Angleone*, 522 U.S. 269, 276 (1998). "The relevance exists even if the fact-finder fails to be persuaded by that evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *State v. McKoy*, 372 S.E.2d 12, 45 (N.C. 1988) (Exum, C.J., dissenting)). Although a jury "may determine the weight to be given relevant mitigating evidence," it "may not give [the evidence] no weight by excluding such evidence from [its] consideration." *Eddings v. Oklahoma*, 455 U.S. 104, 114–15 (1982). "Not only [does] the Eighth Amendment require that capital-sentencing schemes permit the defendant to present any relevant mitigating evidence, but '*Lockett* [*v. Ohio*, 438 U.S. 586 (1978)] requires the sentencer to listen' to that evidence." *Sumner v. Shuman*, 483 U.S. 66, 76 (1987) (quoting *Eddings*, 455 U.S. at 115 n.10); *see also Sheridan v. State*, 313 Ark. 23, 38, 852 S.W.2d 772, 779 (1993) ("Not only must relevant mitigating evidence be admitted, it must be actually considered.").

I wish to make clear that no fault lies with the jury in this case. For many years, this court failed to recognize the lack of clarity in Form 2 of the capital-murder verdict forms,[1]

---

[1]Form 2 has caused much confusion for both juries and courts. *See Williams v. State*, 2011 Ark. 534, at 4–7; *Anderson v. State*, 357 Ark. 180, 219–24, 163 S.W.3d 333, 357–60 (2004); *Anderson v. State*, 353 Ark. 384, 409–11, 108 S.W.3d 592, 608–09 (2003); *Jackson v.*

and this court erroneously applied the law to the facts of cases involving verdict–form challenges. Thus, the fault lies with this court, and we must correct our errors.

Our decisions in *Steven Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), and *Darrel Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998), were wrong. I believe that both *Hill* cases were implicitly overruled by *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004). Lest there be any confusion, we should explicitly overrule them today. As we stated in *Brickhouse v. Hill*, 167 Ark. 513, 268 S.W.2d 865 (1925),

> *If . . . a decision or series of decisions are clearly incorrect*, either through a mistaken conception of the law, or *through a misapplication of the law to the facts*, and no injurious results would follow from their overthrow, *and especially if they were injurious or unjust in their operation, it is the duty of the court to overrule such cases*. Hasty or crude decisions should be examined without fear and reversed without reluctance.

*Id*. at 522–23, 268 S.W.2d at 868 (emphasis added).

The court's errors in *Steven Hill* and *Darrel Hill* were a result of the misapplication of the law to the facts of those cases. In *Steven Hill*, the appellant had turned eighteen about two months before the crimes were committed; this evidence was presented to the jury and was submitted on the verdict form as a mitigating circumstance. 289 Ark. at 396, 713 S.W.2d at 237. The jury marked Form 2 D, which stated that "[t]here was no evidence of any

---

*State*, 352 Ark. 359, 362–69, 105 S.W.3d 352, 355–59 (2003); *Hill v. State*, 331 Ark. 312, 315–18, 962 S.W.2d 762, 763–65 (1998); *Camargo v. State*, 327 Ark. 631, 646–47, 940 S.W.2d 464, 472 (1997); *Willett v. State*, 322 Ark. 613, 625–28, 911 S.W.2d 937, 943–44 (1995); *Bowen v. State*, 322 Ark. 483, 495–98, 911 S.W.2d 555, 560–62 (1995); *Hill v. State*, 289 Ark. 387, 396, 713 S.W.2d 233, 237–38 (1986); *see also Starr v. Lockhart*, 23 F.3d 1280, 1294 n.13 (8th Cir. 1994).

mitigating circumstance." *Id.*, 713 S.W.2d at 237. Because the jury did not mark Form 2 C, which stated that "[t]here was evidence of . . . mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder," the appellant contended that the jury improperly failed to consider the evidence of his youth. *Id.*, 713 S.W.2d at 237.[2] We stated:

> In *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977) . . . the jury *found* that the youth of the appellant, who was apparently 19 or 20 when the crime was committed, was not a mitigating factor. This court affirmed the jury's finding, stating, "[a]ny hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances." *Giles, supra*; *see also Neal v. State*, 261 Ark. 336, 548 S.W.2d 135 (1977).
>
> *We do not interpret the jury's action to mean that they did not consider the evidence of mitigation that was offered.* Rather we find the jury determined that the appellant's youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found.

*Steven Hill*, 289 Ark. at 396, 713 S.W.2d at 237–38 (emphasis added). This was error. Because evidence of mitigation was presented, the only option for the jury to mark, if it did not believe that the evidence presented rose to the level of mitigating evidence was Form 2 C: "There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder."

Our reliance in *Steven Hill* on *Giles* and *Neal* was misplaced because the verdict forms in *Giles* and *Neal* were substantially different from the verdict forms in *Steven Hill*. In *Giles*,

---

[2]Like the verdict forms in Nooner's case, the verdict forms in Steven Hill's case were based on Arkansas Model Jury Instruction–Criminal 1509.

neither section D, nor anything analogous to section D, was a part of the mitigating-circumstances verdict form. The jury in *Giles* was asked to determine only whether each mitigating circumstance existed. By marking each proposed mitigating circumstance, the *Giles* jury acknowledged that it had considered the evidence and then made a finding about the evidence. Likewise, the verdict form from the *Neal* case reveals that the jury was asked to consider whether each mitigating circumstance existed and make a finding to that effect on the verdict form. As in the *Giles* case, nothing like section D was a part of the mitigating-circumstances verdict form in *Neal*.

Key to understanding the error in *Steven Hill* is the distinction between a *failure to consider* evidence of a mitigating circumstance and a *failure to find* a mitigating circumstance. Simply stated, *Giles* and *Neal* were "failure to find" cases and *Steven Hill* was a "failure to consider" case.[3] In *Steven Hill*, this court conflated the two concepts and erroneously applied "failure to find" law to a "failure to consider" case.[4] For that reason, *Steven Hill* should be expressly overruled.

---

[3] The verdict forms at issue in *Giles*, *Neal*, and *Steven Hill* are reproduced in full and attached as appendices to this dissent. *See* Appendices I–III.

[4] While we recognized the distinction between the two concepts in *Bowen v. State*, 322 Ark. 483, 498, 911 S.W.2d 555, 561–62 (1995), due to an incomplete record, we were unable to reach the issue of whether the jury failed to *consider* evidence of the appellant's mental illness.

This court perpetuated this error in *Darrel Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998). As in *Steven Hill*, the court erroneously applied "failure to find" law to a "failure to consider" case:

> Appellant provided several witnesses to testify that he had changed and had become a productive person in prison. Appellant argues that, at a minimum, the jury should have at least found that there was evidence of mitigating circumstances, even if they agreed unanimously that it did not exist. . . . Appellant argues that the jury showed that it *did not consider the evidence by checking that part of the form [Part D] stating that it found no evidence of mitigation.*
>
> This court has previously held that "[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance." *Bowen*, 322 Ark. at 497, 911 S.W.2d at 561 (citing *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987), and *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied*, 479 U.S. 1101, and *cert. denied*, 484 U.S. 873 (1987)). This court held further that the jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it the jurors believe to be true. *Id.* (citing *Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863, *cert. denied*, 504 U.S. 976 (1992), and *Robertson v. State*, 304 Ark. 332, 802 S.W.2d 920 (1991)). . . . Here, *the fact that after consideration*, the jury did not regard Appellant's change as a mitigating factor was not an error, as the jury was free to believe or disbelieve Appellant's witness.

*Id.* at 316–17, 318, 962 S.W.2d at 764–65 (emphasis added). In *Darrel Hill*, the court concluded that, *after consideration*, the jury rejected mitigating evidence. But the jury marked section D, indicating that there was *no* evidence of any mitigating circumstance presented. How could the jury have *considered* evidence when it said there was no evidence? *Darrel Hill* should be expressly overruled.[5]

---

[5]Form 2 as used in *Darrel Hill* is reproduced in full and attached as an appendix to this dissent. *See* Appendix IV.

As I previously stated, I believe that *Steven Hill* and *Darrel Hill* were implicitly overruled[6] in *Anderson*. In that case, Anderson argued that the jury erred in marking Form 2 D, indicating that no evidence of mitigation was offered, when evidence was clearly presented and, at times, went unrebutted by the State. We stated:

> We agree that the jury's decision to check Form 2 D was clearly in error. There was unrebutted evidence offered in mitigation by Anderson regarding the fact that he grew up in an abusive family, that his mother was mentally retarded, and that he was separated from his family and sent to a foster home at an early age. While the evidence may not have established that a mitigating circumstance "probably existed" for the murder, it was certainly presented for that purpose. What the jury should have checked, if it did not believe the evidence presented rose to the level of mitigating evidence, is Form 2 C: "C. ( ) There was some evidence presented to support the following circumstance(s). However, having considered this evidence, the jury unanimously agreed it was insufficient to establish that the mitigating circumstance(s) probably existed[.]" The jurors did not check Form 2 C; nor did they mark any of the proposed mitigators to show that some evidence was offered to support them.
>
> . . .
>
> The Note on Use to Form 2 in our Model Criminal Instructions refers specifically to section D and states that it should be used only when neither the State nor the defendant has introduced any mitigating evidence at any point during the trial. *See* AMI Crim.2d 1008, Form 2. That was not the situation in the instant case. Without proof that the jury at least considered and examined the mitigating evidence

---

[6]The majority states that the *Hill* cases have not been implicitly overruled because this court has continued to cite them with approval even after *Anderson* was decided. The *principle of law* announced in the *Hill* cases—that the jury is not required to find a mitigating circumstance just because the defendant presents some evidence that could serve as the basis for finding the mitigating circumstance—remains good law. This court erred in the *Hill* cases because it *misapplied* that principle of law to the facts of those cases when it ignored the plain language of the verdict forms and held, in effect, that if a jury considered and then rejected mitigating evidence, it had the option of marking either Form 2 C *or* D. *Anderson* implicitly overruled this misapplication of the law.

Cite as 2014 Ark. 296

presented, an essential and fundamental step in the weighing process was not taken, and the death sentence became automatic.

We are mindful that the State contends that the jury's marking of Form 2 D is harmless error, because the jury found that the aggravator outweighed any mitigators in Form 3. What the State's analysis presupposes, however, is that the jury considered the mitigating evidence. By checking Form 2 D, the jury said it did not.

. . .

Based on Form 2 D, we can only conclude that the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Anderson to death solely based on the aggravating circumstance. This, we conclude, was reversible error.

*Anderson*, 357 Ark. at 220–21, 223, 224, 163 S.W.3d at 358, 359, 360.[7]

The majority states that our decision in *Anderson* is not inconsistent with our decisions in *Steven Hill* and *Darrel Hill* because *Anderson* involved different instructions and verdict forms than those used in *Steven Hill* and *Darrel Hill*. According to the majority, a comparison

---

[7]So great was our concern in *Anderson* about the confusion caused by Form 2 D, we urged "circuit courts, prosecutors, and defense counsel to refer to the Note on Use for Form 2 with respect to when the form should be modified to exclude section D." 357 Ark. at 224 n.16, 163 S.W.3d at 360 n.16. We further urged "the Criminal Instructions Committee to consider whether section D should be eliminated altogether, or whether the Note on Use should be revised to specifically delineate those instances in which section D's use would be appropriate." *Id.*, 163 S.W.3d at 360 n.16.

Section D has been eliminated from Form 2. Jurors are now instructed as follows:

For each of the following mitigating circumstances, you should place a checkmark in the appropriate space to indicate the number of jurors who find that the mitigating circumstance probably exists.

*See* AMI Crim. 2d 1008 (2012). This verdict form is reproduced in full and attached as an appendix to this dissent. *See* Appendix VI.

of the verdict forms used in *Anderson*, *see* AMI Crim. 2d 1008, with the verdict forms used in *Steven Hill* and *Darrel Hill*, *see* AMI Crim. 1509, reveals that *Anderson* was not contrary to the law announced in *Steven Hill* and *Darrel Hill*, but was simply a correct result based on the forms and instructions used in Anderson's trial. I disagree. While the forms and instructions used in Anderson's trial may have been slightly reworded, they were not substantially different from the instructions and forms used in Steven Hill's trial and Darrel Hill's trial. Moreover, both versions of the verdict forms were written in accordance with statutory sentencing requirements for capital cases. The procedure for considering and weighing evidence when Anderson was tried was the same when Steven Hill and Darrel Hill were tried. In other words, while the language in the verdict forms may have changed slightly, the law governing sentencing procedures did not. By marking Form 2 D, Steven Hill's jury and Darrel Hill's jury, like the jury in *Anderson*, stated that it did not consider mitigating evidence. *Anderson*, 357 Ark. at 223, 163 S.W.3d at 359.

The majority states that it is the "differing language between" the form used in *Anderson* and the forms used in *Steven Hill* and *Darrel Hill* that accounts for the differing results in the *Anderson* and *Hill* cases. Whether in Arkansas Model Jury Instruction–Criminal 1509, which was used in the *Hill* cases, or Arkansas Model Jury Instruction–Criminal 2d 1008, which was used in *Anderson*, the purposes of Form 2 C and D are the same. Form 2 D should be marked by the jury *only* if there is *no* evidence of mitigating circumstances submitted to the jury. *See*, *e.g.*, *Anderson v. State*, 353 Ark. 384, 410, 108 S.W.3d 592, 609

(2003); *Jackson v. State*, 352 Ark. 359, 362, 105 S.W.3d 352, 355 (2003). Form 2 C should

be marked by the jury if there was evidence of mitigating circumstances submitted to the

jury, but the jury unanimously agreed that it did not find that evidence to be mitigating.

| AMI Crim. 1509 | AMI Crim. 2d 1008 |
|---|---|
| C. There *was evidence* of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder. | C. There *was* some *evidence* presented to support the following circumstance(s). However, having considered this evidence, the jury unanimously agreed it was insufficient to establish that the mitigating circumstances(s) probably existed. |
| D. There was *no evidence* of any mitigating circumstance. | D. *No evidence* of a mitigating circumstance was presented by either party during any portion of the trial. |

(Emphasis added.)

In short, if there *was evidence* of mitigating circumstances, then the jury should mark

Form 2 C. If there was *no evidence* of mitigating circumstances, then the jury should mark

Form 2 D. Having examined the two versions of Form 2 C and D, I fail to see the

"substantial and material amendment" relied on by the majority to explain the differing

results in *Anderson* and the *Hill* cases. What I do see is that the majority has relied on changes

in the wording (but not changes in the meaning) of the verdict forms in an attempt to

distinguish *Anderson* from the *Hill* cases. In other words, the majority has exalted form over

substance to justify disparate treatment of death-row inmates.

*Anderson* cannot be reconciled with *Steven Hill* and *Darrel Hill*. Our decision in

*Williams v. State*, 2011 Ark. 534 makes this clear. In *Williams*, the jury was instructed in

accordance with Arkansas Model Jury Instruction–Criminal 1509, the same instructions and

verdict forms used in the trials of Steven Hill and Darrel Hill. In *Williams*, Williams offered

evidence in mitigation, but the jury erroneously marked Form 2, section D, indicating that

no evidence of mitigation had been presented.[8] We correctly concluded that our failure to

discover the jury's error constituted a defect or breakdown in the appellate process:

> While the evidence presented may or may not have established that a mitigating circumstance "probably existed" for the murder, it was certainly offered for that purpose. If the jury did not believe that the evidence presented rose to the level of mitigating evidence, it should have marked subsection C of Form 2. The jurors did not check Form 2 C; nor did they mark any of the proposed mitigators to show that some evidence was offered to support them. While each juror was polled generally on whether his or her verdict was a death sentence, there was no polling of the jury regarding any mitigating circumstance.
>
> As we held in *Anderson* [*v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004)], the manner in which the jury completed Form 2 D allows us only to conclude that the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Williams to death solely based on the aggravating circumstance, which is reversible error. This error was obviously not discovered during Williams's direct appeal, which constitutes a defect or breakdown in the appellate process in this death-penalty case requiring heightened scrutiny. Because of these unique circumstances, we find we must recall the mandate and reopen Williams's direct appeal. Additionally, we must reverse the death sentence and order resentencing.

*Williams*, 2011 Ark. 534, at 6–7.[9]

---

[8]Form 2 as used in *Williams* is reproduced in full and attached as an appendix to this dissent. *See* Appendix V.

[9]The majority states that this court erred in *Williams* when it concluded that by checking Form 2 D, Williams's jury made the same error that Anderson's jury had made when it checked Form 2 D in *Anderson*. According to the majority, the juries could not have made the same error because the verdict forms were not the same—Form 2 D in *Anderson* was based on AMI Crim. 2d 1008, while Form 2 D in *Williams* was based on AMI Crim. 1509. I find it odd that the majority relies on this "distinction," given that, less than

Nooner's jury, like the jury in *Williams*, was instructed in accordance with Arkansas Model Jury Instruction–Criminal 1509 when it marked Form 2 D. If the jury in Nooner's case did not believe that the evidence presented rose to the level of mitigating evidence, it should have marked Form 2 C. *Anderson*, 357 Ark. at 221, 163 S.W.3d at 358. In Nooner's case, as in *Anderson* and *Williams*, the manner in which the jury completed Form 2 D demonstrates that the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Nooner to death based solely on aggravating circumstances. This is reversible error, and pursuant to our holdings in *Anderson* and *Williams*, this court should recall the mandate and reopen Nooner's direct appeal, reverse Nooner's death sentence, and order resentencing.

Finally, after reading the majority's discussion of the inconsistencies in our decisions regarding whether the three factors first announced in *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003) must be satisfied to demonstrate extraordinary circumstances that warrant the recall of a mandate, I am left with one question: Do the *Robbins* factors have to be

---

three years ago, this court rejected the same "distinction" argument made by the State when it petitioned for rehearing in *Williams*.

satisfied or not?[10] Motions to recall mandate are currently pending in this court. The majority

should settle the issue.

DANIELSON and HART, JJ. join.


*Jennifer Horan*, Federal Defender, by: *Josh Lee* and *Scott W. Braden*, Ass't Federal

Defenders, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kelly Hook Fields*, Sr. Ass't Att'y Gen., for appellee.

---

[10]As I stated in my dissent in *Wooten v. State*, 2010 Ark. 467, 370 S.W.3d 475, this court has long recognized its inherent authority to recall its mandate, *see Boynton v. Ashabranner*, 75 Ark. 415, 422, 88 S.W. 1011, 1011 (1905), and that authority is not limited or controlled by the supposed three-factor test in *Robbins*. *Wooten*, 2010 Ark. 467, at 21, 370 S.W.3d at 486 (Hannah, C.J., dissenting). In *Robbins*,

> this court made it clear that each petition to recall a mandate is examined on its own merits—that such cases are "one of a kind, not to be repeated.'" *Robbins*, 353 Ark. at 564, 114 S.W.3d at 223. A general test cannot be created from a case that clearly states it is one of a kind. Each petition to recall a mandate must be separately examined to determine whether justice requires that the mandate be recalled under the unique facts of that particular case.

*Wooten*, 2010 Ark. 467, at 21, 370 S.W.3d at 486 (Hannah, C.J., dissenting). Thus, my answer to the question of whether the *Robbins* factors must be satisfied is no. I am aware, however, that my dissent in *Wooten* has no precedential value.

# APPENDIX I

[As used in *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977)]

## Form B Mitigating Circumstances

The Jury will make each of the following findings by having its Foreman place a check mark in the appropriate space in the sentence in accordance with the Jury's response. These findings must be unanimously made. Each member of the Jury will then sign the bottom of the form.

WE THE JURY FIND THAT:

(a)    ( ) The capital felony was committed while the Defendant was acting under unusual pressures or influence, or under the domination of another person.

(X) The capital felony was not committed while the Defendant was acting under unusual pressures or influence, or under the domination of another person.

(b)    ( ) The capital felony was committed while the capacity of the Defendant to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law, was impaired as a result of mental disease or defect, intoxication or drug abuse.

(X) The capital felony was not committed while the capacity of the Defendant to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law, was impaired as a result of mental disease or defect, intoxication or drug abuse.

(c)    ( ) The Defendant's age, at the time of the commission of the felony capital [sic], was a mitigating circumstance.

(X) The Defendant's age, at the time of the commission of the capital felony, was not a mitigating circumstance.

(d)    ( ) The capital felony was committed by another person and the Defendant was an accomplice or his participation relatively minor.

(X) The capital felony was not committed by another person and the Defendant was not an accomplice or his participation relatively minor.

(e)    ( ) Additional mitigating circumstances not mentioned above exist.

(X) Additional mitigating circumstances not mentioned above do not exist. (If such other circumstances are found to exist, please indicate them on the reverse side of this form.)

(f)     ( ) The capital felony was committed while the Defendant was under extreme mental or emotional disturbance.

(X) The capital felony was not committed while the Defendant was under extreme mental or emotional disturbance.

(g)     ( ) One or more of the above listed mitigating circumstance(s) existed.

(X) One or more of the above listed mitigating circumstance(s) does not exist.

APPENDIX II

[ As used in *Neal v. State*, 261 Ark. 336, 548 S.W.2d 135 (1977)]

MITIGATING CIRCUMSTANCES

1. The capital felony murder was committed while the defendant was under extreme mental or emotional disturbance:

DOES EXIST _____        DOES NOT EXIST___X___

2. The capital felony was committed while the defendant was acting under unusual pressure or influence, or under the domination of another person:

DOES EXIST _____        DOES NOT EXIST ___X___

3. The capital felony was committed while the capacity of the defendant to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication or drug abuse:

DOES EXIST _____        DOES NOT EXIST ___X___

4. The youth of the defendant at the time of the commission of the capital felony:

DOES EXIST _____        DOES NOT EXIST ___X___

5. The capital felony was committed by another person and the defendant was an accomplice or his participation was relatively minor.

DOES EXIST _____        DOES NOT EXIST ___X___

APPENDIX III

[As used in *Steven Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986)]

AMCI 1509

Form 2

MITIGATING CIRCUMSTANCES

A.  ( ) We unanimously find that the following mitigating circumstances probably existed at the time of the murder: (Check applicable circumstances and specify any additional ones.)

( ) The capital murder was committed while Steven Hill was under extreme mental or emotional disturbance.

( ) The capital murder was committed while Steven Hill was acting under unusual pressures or influences or under the domination of another person.

( ) The youth of Steven Hill at the time of the commission of the capital murder.

( ) Other: Specify in writing. _____

_____

B. ( ) One or more members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree:

( ) The capital murder was committed while Steven Hill was under extreme mental or emotional disturbance.

( ) The capital murder was committed while Steven Hill was acting under unusual pressures or influences or under the domination of another person.

( ) The youth of Steven Hill at the time of the commission of the capital murder.

( ) Other: Specify in writing. _____

_____

C. ( )There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder:

iv

( ) The capital murder was committed while Steven Hill was under extreme mental or emotional disturbance.

( ) The capital murder was committed while Steven Hill was acting under unusual pressures or influences or under the domination of another person.

( ) The youth of Steven Hill at the time of the commission of the capital murder.

( ) Other: Specify in writing. _____

_____

D.  (X) There was no evidence of any mitigating circumstance.

(Check if applicable.)

/s/_____
FOREMAN

APPENDIX IV

[As used in *Darrel Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998)]

FORM 2
MODIFIED

MITIGATING CIRCUMSTANCES

A.  ( ) We unanimously find that the following mitigating circumstances probably existed:

(Check applicable circumstances and specify any additional ones.)

( ) The capital murder was committed while Darrel Hill was under extreme mental or emotional disturbance.

( ) The murder was committed while Darrel Hill was acting under unusual pressures and influences or under the domination of another person.

( ) The capital murder was committed while the capacity of Darrel Hill to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse.

( ) Other:

( ) Darrel Hill has a good prison record.

( ) Darrel Hill has expressed remorse for the crime.

( ) Darrel Hill grew up in a dysfunctional family.

( ) Darrel Hill has friends who care about him.

( ) Darrel Hill is a changed person.

( ) Darrel Hill has been active in the prison ministry while in jail.

( ) Darrel Hill has a long history of prior mental commitments.

( ) Darrel Hill is unlikely to commit another crime that would constitute a threat to society.

( ) Darrel Hill's poor medical condition and heart bypass surgery.

( ) Other mitigating circumstances not specifically identified by the State or the defense.

_____

_____

B.  ( ) One or more of the members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree:

( ) The capital murder was committed while Darrel Hill was under extreme mental or emotional disturbance.

( ) The murder was committed while Darrel Hill was acting under unusual pressures and influences or under the domination of another person.

( ) The capital murder was committed while the capacity of Darrel Hill to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of his mental disease or defect, intoxication, or drug abuse.

( ) Other:

( ) Darrel Hill has a good prison record.

( ) Darrel Hill has expressed remorse for the crime.

( ) Darrel Hill grew up in a dysfunctional family.

( ) Darrel Hill has friends who care about him.

( ) Darrel Hill is a changed person.

( ) Darrel Hill has been active in the prison ministry while in jail.

( ) Darrel Hill has a long history of prior mental commitments.

( ) Darrel Hill is unlikely to commit another crime that would constitute a threat to society.

( ) Darrel Hill's poor medical condition and heart bypass surgery.

( ) Other mitigating circumstances not specifically identified by the State or the defense.
_____
_____

C. ( ) There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist:

( ) The capital murder was committed while Darrel Hill was under extreme mental or emotional disturbance.

( ) The murder was committed while Darrel Hill was acting under unusual pressures and influences or under the domination of another person.

( ) The capital murder was committed while the capacity of Darrel Hill to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse.

( ) Other:

( ) Darrel Hill has a good prison record.

( ) Darrel Hill has expressed remorse for the crime.

( ) Darrel Hill grew up in a dysfunctional family.

( ) Darrel Hill has friends who care about him.

( ) Darrel Hill is a changed person.

( ) Darrel Hill has been active in the prison ministry while in jail.

( ) Darrel Hill has a long history of prior mental commitments.

( ) Darrel Hill is unlikely to commit another crime that would constitute a threat to society.

( ) Darrel Hill's poor medical condition and heart bypass surgery.

( ) Other mitigating circumstances not specifically identified by the State or the defense.
_____

_____

D. (X) There was no evidence of any mitigating circumstance.

(Check if applicable).

/s/_____
FOREMAN

APPENDIX V

[As used in *Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995)]

FORM 2 – MITIGATING CIRCUMSTANCES

A. ( ) We <u>unanimously</u> find that the following mitigating circumstances probably existed at the time of the murder:

(Check applicable circumstances and specify any additional ones.)

( ) The capital murder was committed while Frank Williams was under extreme mental or emotional disturbance.

( ) The capital murder was committed while Frank Williams was acting under unusual pressures or influences or under the domination of another person.

( ) The capital murder was committed while the capacity of Frank Williams to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse.

( ) The youth of Frank Williams at the time of the capital murder.

( ) Other: (Specify in writing.) _____

_____

B. ( ) <u>One or more</u> members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree:

(Check applicable circumstances and specify any additional ones.)

( ) The capital murder was committed while Frank Williams was under extreme mental or emotional disturbance.

( ) The capital murder was committed while Frank Williams was acting under unusual pressures or influences or under the domination of another person.

( ) The capital murder was committed while the capacity of Frank Williams to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse.

( ) The youth of Frank Williams at the time of the capital murder.

( ) Other: (Specify in writing.) _____

_____

C.   ( ) There was evidence of the following mitigating circumstances, but the jury <u>unanimously</u> agreed that they <u>did not</u> exist at the time of the murder:

(Check applicable circumstances and specify any additional ones.)

( ) The capital murder was committed while Frank Williams was under extreme mental or emotional disturbance.

( ) The capital murder was committed while Frank Williams was acting under unusual pressures or influences or under the domination of another person.

( ) The capital murder was committed while the capacity of Frank Williams to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse.

( ) The youth of Frank Williams at the time of the capital murder.

( ) Other: (Specify in writing.) _____

_____

D. (X) There was <u>no</u> evidence of any mitigating circumstance.
        (Check if applicable.)

/s/_____
FOREPERSON

APPENDIX VI

Arkansas Model Jury Instruction—Criminal 2d 1008 (2012)

Form 2

MITIGATING CIRCUMSTANCES

For each of the following mitigating circumstances, you should place a checkmark in the appropriate space to indicate the number of jurors who find that the mitigating circumstance probably exists.

[The capital murder was committed while (defendant) was under extreme or emotional disturbance.

Check one of the following:

_____ All members of the jury find that this circumstance probably exists.

_____ At least one, but not all members of the jury find that this circumstance probably exists.

_____ No member of the jury finds that this circumstance probably exists.]

[The capital murder was committed while (defendant) was acting under unusual pressures or influences or under the domination of another person.

Check one of the following:

_____ All members of the jury find that this circumstance probably exists.

_____ At least one, but not all members of the jury find that this circumstance probably exists.

_____ No member of the jury finds that this circumstance probably exists.]

[The capital murder was committed while the capacity of (defendant) to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse.

Check one of the following:

_____ All members of the jury find that this circumstance probably exists.

_____ At least one, but not all members of the jury find that this circumstance probably exists.

_____ No member of the jury finds that this circumstance probably exists.]

[The youth of (defendant) at the time of the commission of the capital murder.

Check one of the following:

_____ All members of the jury find that this circumstance probably exists.

_____ At least one, but not all members of the jury find that this circumstance probably exists.

_____ No member of the jury finds that this circumstance probably exists.]

[The capital murder was committed by another person and (defendant) was an accomplice and (his) (her) participation relatively minor.

Check one of the following:

_____ All members of the jury find that this circumstance probably exists.

_____ At least one, but not all members of the jury find that this circumstance probably exists.

_____ No member of the jury finds that this circumstance probably exists.]

[(Defendant) (has) (had) no significant history of prior criminal activity.

Check one of the following:

_____ All members of the jury find that this circumstance probably exists.

_____ At least one, but not all members of the jury find that this circumstance probably exists.

_____ No member of the jury finds that this circumstance probably exists.]

Other mitigating circumstances. Specify below in writing any other mitigating circumstances that all members of the jury find probably exists. If no member of the jury finds that other

mitigating circumstances probably exist, leave the space below blank.

_____

_____

Other mitigating circumstances. Specify below in writing any other mitigating circumstances that all members of the jury find probably exists. If no member of the jury finds that other mitigating circumstances probably exist, leave the space below blank.

_____

_____

_____
FOREMAN

## NOTE ON USE

With respect to each mitigating circumstance listed on Form 2, the jury should indicate that either (1) all jurors find that a mitigating circumstance probably exists; or (2) at least one, but not all jurors find that the mitigating circumstance probably exists; or (3) no juror finds that the mitigating circumstance exists.

Mitigating circumstances include, but are not limited to, those listed in Ark. Code Ann. § 5-4-605. If supported by the evidence, it is permissible to include on Form 2 additional mitigating circumstances proffered by the defendant if the form is consistent with that above.

Mitigating circumstances are not limited to those in existence at the time of the capital murder but may include events that have occurred after the defendant's arrest or even during imprisonment pending a successful appeal from a death sentence. *Skipper v. South Carolina*, 476 U.S. 1 (1986), followed in *Pickens v. State*, 292 Ark. 362, 730 S.W.2d 230 (1987). The trial court is not required to instruct that a lingering doubt regarding guilt may be considered a mitigating circumstance. *Ruiz v. State*, 299 Ark. 144, 772 S.W.2d 297 (1989).

The final portion of Form 2 permits the jury to specify any mitigating circumstances not specifically listed on the form.

There may be rare and extraordinary cases in which no specific mitigating circumstances are listed on the verdict form submitted to the jury. In such a case, Form 2 should include only the final portion in which the jury may specify in writing its own mitigating circumstances. In addition, Form 2 should be modified to require the jury to write "None" in the space provided for mitigating circumstances, thereby permitting an appellate court to determine that the jury considered and rejected any mitigating circumstances.